JOHNSON v. STATE.

(*Nashville.* January 19, 1898.)

1. DEDICATION. *User.*

Mere user of land as a public road for fourteen years, is not . sufficient evidence of dedication. (*Post, p. 258.*)

2. VERDICT. *Of voluntary manslaughter.*

Upon the facts set out in the opinion the Court holds that the killing was "wholly unjustifiable" and the verdict of voluntary manslaughter "very merciful and exceedingly lenient." (*Post, pp. 255–260.*)

3. CHARGE OF COURT. *Refusal of request proper, when.*

It is not error for the Court to refuse, on the trial of a murder case, to charge upon the subject of insane delusions, where the sole defense is justifiable homicide and there is no evidence of insanity. (*Post, p. 260.*)

4. SAME. *Same.*

If the original charge is full and correct upon the subject of self-defense, it is not error for the Court to refuse to give further instruction upon that subject. (*Post, p. 261.*)

5. INSANITY. *Tests.*

Insanity, in order to excuse a party for crime, must be of such a character as to deprive the person of his reason so far as to render him incapable of distinguishing between right and wrong, or of discerning good from evil. The capacity to know right from wrong and to know that the particular act being committed is wrong, is the rule recognized in this State for testing criminal accountability. The court properly refuses ·to give instructions that adopt any other test, and properly refuses a new trial upon affidavits showing merely peculiarities

Johnson v. State.

of temperament and occasional eccentricities of conduct on the part of defendant. (*Post, pp. 260, 261.*)

Case cited and approved: Wilcox v. State, 94 Tenn., 117.

---

FROM HUMPHREYS.

---

Appeal in error from Circuit Court of Humphreys County. A. H. MUNFORD, J.

J. H. FUSSELL and W. B. GORDON for Johnson.

Attorney-general PICKLE for State.

MCALISTER, J. The plaintiff in error was indicted in the Circuit Court of Humphreys County for the murder of W. G. Averett. At the July term, 1896, the prisoner was convicted of voluntary manslaughter and his punishment fixed by the jury at confinement in the State penitentiary for the term of five years. He has appealed in error.

The plaintiff in error owned and occupied, with his family, a house and lot in the town of Waverly. It appears that the Board of Mayor and Aldermen had laid out and ordered to be opened, a street, eighteen feet in width, in front of defendant's property. Prior to this time there had been in front of plaintiff's property an open space about thirty-five feet in width. Defendant had no title to the ground in front of his lot, nor had it, prior to the action

of the corporate authorities, been opened or dedicated
to the public, but the same was the property of J.
N. Nolan.   In April, 1896, under the direction of
the street commissioners of said town, workmen com-
menced the building of a fence north of defendant's
lot and about eighteen feet from his fence.   The
same evening, about six o'clock, after the hands quit
work, the defendant, L. C. Johnson, went out and
pulled up the stakes which had been set for the
purpose of indicating the line of the new fence.   He
remarked to one of the workmen, "You don't know
how near you are in hell."   The prisoner then spoke
very abusively of one or two persons whom he
charged with trying to steal his property, and sent
them word that if they came on that street he in-
tended to kill them.   Said he to the witness, "The
first man who puts a post in the corner, I will
land him in hell."

On the following morning the deceased, William
Averett, who was the town marshal of Waverly,
with a force of hands, went to the place for the
purpose of building the fence.   It appears that the
town marshal, apprehensive of trouble with the de-
fendant, had borrowed a pistol, and had it at the
time upon his person.   Probably others in the party
were also armed.   While the hands were engaged in
digging the holes the defendant sent his son out
there to ask if the men knew what they were doing.
The deceased, in reply, sent word to defendant by
his little boy to come out there and he would tell

him what he was doing. Presently the defendant was seen adjusting curtains at the side window of an outhouse on his premises. When next seen he appeared in his yard with a double-barreled shotgun. At that moment the deceased was engaged with both hands in putting a post in one of the holes about forty yards away from defendant. The defendant cried "Look out!" and, leveling his gun at deceased, fired, killing him instantly. The defendant then wheeled and pointed his gun in the direction of the crowd, who immediately fled in great precipitation, but no further violence was executed.

It appears that the pistol already mentioned was found upon the body of Averett, but, as stated, he had made no effort whatever to use it, and was not looking in the direction of defendant at the time the fatal shot was fired. It is further shown that after the deceased had fallen the defendant inquired of one or two persons who were standing near if Averett was dead, and, when assured that he was, remarked: "That is what I wanted to do; I am trying to protect my family." To others he claimed to have done the shooting in the protection of himself and family. He said, further, "that he had been imposed upon just as long as he could stand it." While in jail defendant sent for a friend, and said to him: "This is a terrible thing I have done. I have not only separated myself from my family, but I have taken another man from his family forever; that he did not know why he had killed Averett,

16 P—17

unless the devil was in him; that he intended to kill J. N. Nolan, Mike Connelly, and Tom Lomax."

It was claimed by defendant that J. N. Nolan was the instigator of all the trouble; that in 1883 Nolan fenced up the north end of the street about his property, and opened up a cross street intersecting with a public highway running north from Waverly to Richland Street; that then this cross street was his (defendant's) only outlet or way of getting to his front street; that, in 1884, he, defendant, procured an order of Court to have this Richland Street included in the public highway, and that he worked it for four years as such, until it was taken into the corporation of Waverly. Defendant insists that this street or road had been dedicated to the public for fourteen years. If these facts were at all material in such an investigation, we find in this record no proof of dedication; and user for only fourteen years is insufficient to create an easement in favor of the public. Moreover, J. N. Nolan testified that he owned the land north of defendant up to his yard fence, and that no alley or street north of him, running east and west, had ever been given by him to the public. , The witness further testified that said ground had never been opened or used as a street by the public until the day before Averett was killed. It was simply out on the commons.

Defendant admits that he told witness, Andrew Johnson, that he would kill the man who set

the first post to build the fence in the middle of this street. Defendant testified he believed they were coming there to build this fence to get a chance to kill him, and that he got a shotgun and a Winchester rifle to defend himself and family. Defendant claims he saw Mike Connelly, one of Nolan's employes, go up the hill, back of Nolan's house, that morning, and heard two or three pistol shots from that direction, and that afterwards Connelly joined the crowd in front of his house. Connelly admits getting the pistol, firing it off, and being with the crowd in the street. Defendant admits the crowd in the street did not threaten his family nor do them any harm, and that none of the crowd with Averett tried to kill him (defendant); that he saw no such effort on the part of anyone. Defendant further testified that Nolan had been sitting that morning on the back veranda of his (Nolan's) house, and that if he (defendant) had seen him at time Averett was putting in post, he (defendant) would have killed him.

Mrs. Thomas, a witness introduced by defendant, testified that she went to defendant's house on the morning of the killing, and told him he was in danger, and if he hurt or killed anybody, they would kill him; that she went there because of defendant's threats to kill; that she had heard no one threaten to kill him. "I told him," says the witness, "if he had any notion to kill anybody not to do it; that he was just as liable to get killed

as anyone.'' He said he was justifiable. When she talked to him and tried to dissuade him from killing some one, he replied: '' You had as well talk about something else; my mind is made up.''

The defendant proved an excellent character for truth and honesty, but we are constrained to believe, from the facts disclosed in this record, that the killing was wholly unjustifiable, and that the jury, in finding him guilty of voluntary manslaughter and fixing his punishment at five years, have rendered a very merciful and exceedingly lenient verdict.

We next notice assignments of error upon the charge of the Court. Counsel for defendant, by his second request for additional instructions, sought to have the Court charge upon the subject of insane delusions. The defense of insanity was not interposed on the trial, and no evidence was submitted upon such an issue. The defense solely relied on was justifiable homicide. Moreover, the request submitted on the subject of insane delusions is not in accord with the standard prescribed by this Court for determining responsibility for criminal acts. Insanity, in order to excuse a party for crime, must be of such a character as to deprive the person of his reason so far as to render him incapable of distinguishing between right and wrong, or of discerning good from evil. The capacity to know right from wrong, and to know that the particular act being committed is wrong, is the rule recognized in this State for testing criminal accountability.

*Wilcox* v. *State*, 10 Pickle, 117. On the motion for a new trial affidavits were submitted on the subject of defendant's mental condition. The affidavits, while disclosing peculiarities of temperament, and at times eccentricities of conduct on the part of defendant, do not undertake to show that he was incapable of distinguishing between right and wrong.

Again, error is assigned upon the refusal of the Circuit Judge to charge certain propositions on the law of self - defense. The Court, in his original charge, instructed the jury fully and correctly on this subject. The defendant himself shows that at the time the fatal shot was fired he was in no danger, nor were there any reasonable grounds for the apprehension of danger. There was no occasion for any fuller or more explicit instructions on the law of self-defense than those already submitted by the Circuit Judge.

There is no error in the record, and the judgment is affirmed.