KENNETH SPURLOCK, Plaintiff in Error,

*v.*

STATE OF TENNESSEE.

368 S.W. 2d 299.

*(Nashville,* December Term, 1962.)

Opinion filed June 4, 1963.

GEORGE E. BARRETT, Assistant Public Defender, Nashville, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, LYLE REID, Assistant Attorney General, Nashville, for the State.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

Kenneth Spurlock, plaintiff in error, was indicted for burglary and larceny, and under this indictment was convicted of petit larceny and sentenced to pay a fine of $10.00 and serve (11) months and twenty-nine (29) days in the county jail. From this conviction he has seasonably perfected an appeal, assignments of error and briefs have been filed and arguments heard, and now after studying the record and authorities we have the matter for disposition.

The case was tried upon a stipulation of facts which in brief cited that during the night of October 17, 1962, the plaintiff in error broke into a business house in Davidson County and stole approximately $25.00; that the plaintiff in error stole an automobile in which he was apprehended; and that he admitted both acts to the police officers.

 The only insistence of the plaintiff in error is that he was insane at the time he committed the acts. "Insanity as a defense in criminal prosecutions is a question of fact for the jury to determine under proper instructions by the court as other facts are found." 14 Am.Jur., sec. 42, page 799. The law presumes sanity, and, this being true, obviously the burden is upon the plaintiff in error to show insanity, voluntary or involuntary. *Mullendore v. State,* 183 Tenn. 53, 191 S.W.2d 149.

The question as to the sanity of the plaintiff in error was the only testimony offered in this case. This testimony consisted of that of Dr. Albert R. Lawson, a psychiatrist on the faculty of Vanderbilt University and Meharry Medical College. The State introduced the testimony of Dr. J. N. Fidelholtz, a psychiatrist in charge of the Maximum Security Unit at Central State Hospital, and Dr. Frank H. Luton, a psychiatrist and Clinical Director at Central State Hospital and Professor of Psychiatry at Vanderbilt Medical College.

The record shows that prior to the trial the plaintiff in error was committed to the Central State Hospital for observation. The hospital reported that the plaintiff in error was not insane and that he had a good concept of right from wrong and knew the acts of which he was accused were morally and legally wrong; and also that he was of normal intelligence and had sufficient judgment to advise counsel of his defense. Of the three psychiatrists who testified in this case Dr. Fidelholtz and Dr. Luton were of the opinion that the plaintiff in error knew right from wrong. Dr. Lawson went into some detail as to the ability to know right from wrong, and stated it was a judgment that one did not like to make and could not make except by relating the questions to

the individual's background, experience and life, and from this it was his opinion that the plaintiff in error did not know right from wrong. It was the testimony of Dr. Luton that plaintiff in error was not insane according to the M'Naghten Rule and it was questionable whether or not the man was insane under the Durham Rule.

 The assignments go to the refusal of the court to give a special request which is bottomed on the Durham Rule, and certain questions asked the psychiatrists. We, in this State, for nearly a hundred years have followed the view quoted below:

"The prevailing view, however, is apparently to the effect that the capacity of the accused to distinguish right from wrong in respect of the act charged as a crime at the time of its commission is made the test of his responsibility, and not his capacity or ability to distinguish right from wrong in the abstract. Hence, as a composite rule, if a person at the time of the commission of an alleged crime has sufficient mental capacity to understand the nature and quality of the particular act or acts constituting the crime and to know whether they are right or wrong, he is responsible if he commits such act or acts, whatever may be his capacity in other particulars; but if he does not possess this degree or capacity, then he is not so responsible." 14 Am.Jur., sec. 40, page 797.

The charge of the court in the instant case was in compliance with this above legal statement as quoted from American Jurisprudence.

This Court has followed this view in numerous cases for nearly a hundred years, beginning with *Dove v. State,*

50 Tenn. 348, and many of the cases we have followed have applied the rule over the years and are collected in *Temples v. State,* 183 Tenn. 531, 537, 538, 194 S.W.2d 332.

If we should substitute the theory of the special request herein for the law as it now stands in this State, we would be substituting trial by jury for trial by psychiatrists. The questions here involved have been excellently annotated in 70 A.L.R., beginning at page 659, and in 173 A.L.R., beginning at page 391.

The M'Naghten Rule that is applied in this State, and most other states, is historically and chronologically discussed in the 70 A.L.R. annotation above referred to. Among other things the annotator says of this rule:

"Since then the 'right or wrong test' annunciated by that case, though condemned as being unscientific and based on fallacious principles by the overwhelming weight of medical authority, has nevertheless been tenaciously adhered to by a great many courts as the only safe standard under which there can be had a proper administration of justice."

We agree with this statement.

The Durham Rule, as contended for by the plaintiff in error, gets its name from the case wherein it originated of *Durham v. United States,* 94 U.S.App.D.C. 228, 214 F.2d 862, 45 A.L.R.2d 1430. In this Durham case it was held that the so-called right or wrong test, supplemented by the irresistible impulse test, does not alone supply adequate criteria for determining criminal responsibility of a person of alleged mental incapacity.

■■ Counsel for plaintiff in error ably argued at the bar of this Court and in his brief that the giving of the

right or wrong test, as given by courts of this State, violates the due process clause and thus giving such an instruction as to the law is unconstitutional. The Supreme Court of the United States in *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302, held that due process does not require a State to eliminate "right and wrong" test of insanity and to adopt the line of "irresistible impulse" test. We agree with this conclusion and adopt it here.

The Assistant Attorney General in his brief in this case has made such an excellent statement as to why we should adhere to the right and wrong test which has been adhered to by us over the years and we adopt and quote his statement as part of our opinion. He said:

"The question involves basic principles of criminal law. To insure the continuance of an orderly society the law must prohibit conduct which seriously disrupts the community, which conduct we refer to as crime, and it must require some accountability of those persons who violate these community sanctions. The most effective manner by which to determine accountability which has been found is trial by jury within the framework of well-established rules of law. In regard to those matters to be decided by the jury, the law ascribes to it complete wisdom, despite the fact that we know it is not all wise. The necessity for this fiction is that total human behavior is not an exact science and cannot presently be completely understood and explained. Consequently, in the absence of complete understanding we must accept the next best, which is the judgment of the community reflected in the decision of twelve members of that community. The determination rendered in regard to a person accused of committing

a crime, which is in the form—guilty or not guilty, is a composite judgment reflecting social, intellectual and moral values.

"In this case we are concerned with a particular rule of law which establishes the standard of mental capacity which must be possessed by an accused to be held criminally responsible for his unlawful acts. Under the rule heretofore followed by this Court, the law permits the introduction of evidence in the form of expert medical testimony in regard to the mental capacity of the accused but reserves the final judgment of legal responsibility to the jury. The argument is made that the psychiatrist cannot reduce his examination and findings to the concept of right and wrong and that, consequently, the great advancements in medical knowledge concerning the effect of mental diseases and defects upon the conduct of individuals is not taken into consideration in determining criminal responsibility. This case refutes that argument.

"Examination of the testimony of the three psychiatrists in this case reveals that of the ninety-eight pages of their testimony only a few lines are devoted to the question of whether the defendant knew right from wrong. They describe in their own terms their findings and their conclusions in regard to the defendant's mental condition and the connection between such condition and his acts. It cannot be denied that the jury understood a substantial part of their testimony and that this understanding was reflected in a large measure in the verdict of the jury. If the jury in this case had required, in order to relieve the defendant of any responsibility for his acts, complete impairment of his cognitive capacity, as the defendant argues it must

under the M'Naghten Rule, it would have found him guilty of all the crimes of which he was charged and his punishment would have been commensurate with its finding and necessarily would have resulted in his being sentenced to the State Penitentiary for a longer period of time. Certainly the testimony of the psychiatrists was considered and certainly the defendant was relieved of some criminal responsibility though not all.

"Had the Court charged the Durham Rule would the psychiatrist have a wider range within which to testify and thus be of more assistance to the jury? The answer is no unless the final determination of guilty or not guilty is to be made by the medical witnesses. Any rule, the practical effect of which is to permit the guilt or innocence of an accused to be determined except by the jury, would be a serious departure from one of the most basic fundamentals of our criminal jurisprudence. Of course, the proponents of the Durham Rule deny that they want the psychiatrists to make the final determination of guilt or innocence, but the practical effect of that rule would be in that direction.

"The practical effect of Defendant's proposal also should be considered. The defendant has committed several violent crimes and he has demonstrated inability to be a law-abiding member of the community. Would those who find fault with the present law release the defendant upon society? The proposal advanced by the defendant would have this practical result.

"If we are to experiment, why is the Durham Rule proposed, why not the Curren's Rule ([*United States v. Currens*] 290 F.2d 751, 3rd. Cir. 1961), which found the Durham Rule inadequate? Why not adopt the

140

Model Penal Code (tentative draft No. 4, 1955), which offers still a different rule?

"Defendant would have this Court summarily discard a rule of law that is followed by every State except one *(State v. Pike,* 49 N.H. 399), and every Federal Circuit except two (Durham and Curren), and which expressly has been the law in this State for almost one hundred years in favor of a rule of doubtful validity which, despite the high praise of psychiatrists and sociologists, has not been accepted by any jurisdiction except that in which the rule originated. Until a definitely superior rule of law is presented and enacted by the Legislature, perhaps Tennessee will, in the words of *Anderson* [*Andersen*] *v. United States,* [9 Cir.], 237 F.2d 118, 'trudge along the now well-traveled pike blazed more than a century ago by M'Naghten.' "

For reasons herein stated the judgment of the trial court must be affirmed.