Carlos **WHITMIRE**, Plaintiff in Error,

v.

**STATE** of Tennessee, Defendant in Error.

Court of Criminal Appeals of Tennessee.

July 5, 1972.

Certiorari Denied by Supreme Court
Sept. 18, 1972.

Charles M. Corn and Denny Mobbs, Cleveland, for plaintiff in error.

David M. Pack, Atty. Gen., John B. Hagler, Jr., Asst. Atty. Gen., Nashville, Earle G. Murphy, Dist. Atty. Gen. pro tem., Cleveland, for defendant in error.

## OPINION

DWYER, Judge.

This is an appeal from a conviction for committing the offense of assault with the intent to commit murder in the second degree with resulting sentence of confinement for not less than one year nor more than five years.

The only assignment of error is directed at the trial court's charge of the law pertaining to insanity at the time of the commission of the act. The portion of the charge complained of is as follows:

" . . . and if it *clearly appears* to you that the Defendant, at the time of the assault was insane to the extent that he did not know right from wrong, . . . " (Emphasis added.)

A similar charge was condemned by this court in an unpublished opinion, cited and relied upon by the defendant, styled Vernon Miller v. State, Knoxville, February 19, 1971. The court reasoned that charging "clearly appears" places the onus on the defendant to prove his insanity at the time beyond a reasonable doubt. We made our deduction in that opinion from somewhat similar language condemned by our Supreme Court in Dove v. State, 50 Tenn. 348. The State in its reply brief in this appeal submits this matter without recommendation in view of our holdings in Miller v. State, supra. We there condemned the language used and do not here step back one step from our denunciation of the wording found in the charge involved in that opinion. We therefore hold here that the language "clearly appears", as used in this charge, was erroneous.

However, we do not feel this error is cause to reverse this conviction. In order to illuminate this conclusion we will narrate the facts that are found in this record.

The defendant and his family were neighbors of the victim in Cleveland for some twenty years. They had peacefully resided in that proximity all through the years, until six months prior to the assault. It then appears that a land dispute, pertaining to an alleyway between their homes, which was going to be utilized as a county road, precipitated hostile feelings culminating in civil litigation. On the morning of the civil action hearing, the victim went out to his truck and was defrosting the windshield. The defendant appeared, discussed his attorney's fees, and asked the victim what he was going to do about it today, to which the victim responded he did not know, but that he hoped it would be settled. Whereupon, the defendant said he was going to settle it right now, and pulled out a revolver and fired five shots, two of which hit the victim, wounding him in the cheek and wrist.

There was interposed by the defense at trial vigorous pleas of self defense and insanity at the time of the act.

The State's proof reflects that the wife of the victim stated that defendant immediately after the shooting looked dazed and

blank. The defendant related a detailed account of the event, relying on self defense, in stating that the victim approached him with a handle in his hand and that the pistol fell into the defendant's hand. Defendant further recounted firing the pistol in rapid fire fashion and taking the pistol into his home. He also recounted that as he approached the victim before the shooting he was aware that he had the pistol and that it was loaded.

Defendant's wife testified that when she went to work that morning defendant was rational but had not slept well the night before. She also related that years before defendant had assumed financial defaults of her parents which had upset him. We also note that she stated that the land dispute had caused him to change and that he had cursed about it. Further, that at the jail on the morning of the shooting the defendant was calm and rational and made sense.

Defendant's son related in substance that his father made sense and appeared calm at the jail.

There was also testimony by these two witnesses that defendant had been involved in an automobile accident in 1965 which caused a change in his attitude.

■ In short, we are being urged in this cause to reverse this conviction on the failure of the trial judge to accurately charge the law, on an issue which, as we view the total proof, the presented evidence did not raise. In other words, there is not a scintilla of evidence to support the giving of the charge, or the possible conclusion that the defendant at the time of the shooting could *not distinguish between right and wrong.* See Spurlock v. State, 212 Tenn. 132, 368 S.W.2d 299. We note also that in the *Miller* opinion, supra, we held that the charge failed to convey the burden on the State to establish mental competency beyond a reasonable doubt *once the issue has been made viable by proof of insanity either adduced by the State or defendant.*

We cannot see here that the proof offered by either side has made the issue of insanity a viable or justiciable issue requiring a charge.

■ We are satisfied that lay witnesses such as the wife and the son may testify and give opinions as to the sanity of the defendant, based upon facts personally observed. See Atkins v. State, 119 Tenn. 458, 471, 105 S.W. 353 and Davis v. State, 161 Tenn. 23, 37, 28 S.W.2d 993. But in the case at hand, neither of these witnesses stated nor was asked as to an opinion pertaining to the sanity of the defendant at the time of the shooting.

■ We further think that to predicate a mandatory charge to the jury, of insanity at the time, upon a blank or dazed look on the accused's face, reported by the wife of the victim, would be legal sophistry. This does not measure up to the quantum or quality of substantial evidence to require the charge. We further feel that because defendant entered the insanity plea, under his not guilty plea, would not and does not in the absence of evidence command the charge. See Taylor v. State, 212 Tenn. 187, 191, 369 S.W.2d 385.

■ The accused in a criminal case is entitled to a charge as the facts of the case require. See Allen v. State, 13 Tenn. 373, and Nelson v. State, 32 Tenn. 287.

■ We reiterate the established rule that the law presumes the sanity of an accused. The burden is on the defendant to raise the issue of insanity, voluntary or involuntary. See King v. State, 91 Tenn. 617, 646, 20 S.W. 169, and Stuart v. State, 60 Tenn. 178, 182. The defendant herein failed to present any material and substantial evidence to overcome this presumption. As stated, there is not a scintilla of evidence in this record to the effect that in anyone's opinion defendant at the time of the crime could not distinguish between right and wrong. See Lester v. State, 212 Tenn. 338, 370 S.W.2d 405, 408–409.

There is substantial evidence in the record to the effect that from the observation of witnesses, immediately before and after the shooting, the accused was sane. The charge of the learned trial judge relating to the law on insanity at the time was erroneous as to the beyond a reasonable doubt standard it tended to apply. But where there is, as here, an absence of material and substantial evidence to raise the issue of sanity, such an error in the charge does not affect the outcome of the verdict to the defendant's prejudice. See T.C.A. § 27–117.

In closing, the trial court was under no requirement to charge on the issue of insanity, as we view the evidence; however, since the charge was given, we will consider its adequacy. The court's charge was:

"In order for insanity or temporary insanity to be a defense to the commission of a crime, the defendant would have to prove that he was laboring under such a defect of reason from disease of the mind, permanent or temporary, as not to know the nature and quality of the acts he was doing, or if he did know it, that he did not know he was doing wrong. If the faculty and ability to determine between right and wrong are still present in the mind of a defendant, insane delusion, irresistible impulse, temporary in-

sanity, nor insanity can be an excuse for the commission of a crime. The above rule you must use in deciding the accountability of the defendant in this case and if it clearly appears to you that the defendant, at the time of the killing, was insane to the extent that he did not know right from wrong, you should acquit him, or if the evidence produced raises a question as to the defendant's sanity then *it is incumbered upon the State to establish the sanity of the defendant*, the same as it is to establish beyond a reasonable doubt all the other elements of the crime before a conviction can be had." (Emphasis added.)

The italicized portion properly conveyed to the jury that the burden of proof as to sanity was upon the State to establish beyond a reasonable doubt. The jury, as we view the charge in toto, was not mislead under the facts and circumstances found in this record, because the lengthened charge, as compared to the charge in the *Miller* case, supra, cures any possible doubt as to the location of the burden of proof of sanity.

The judgment of the trial court is affirmed.

OLIVER and O'BRIEN, JJ., concur.