**Donald BROOKS, Plaintiff in Error,**

v.

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

July 31, 1972.

Certiorari Denied by Supreme Court
Dec. 18, 1972.

Russell X. Thompson and Charles W. Burson, Memphis, for plaintiff in error.

David M. Pack, Atty. Gen., Robert H. Roberts, Asst. Atty. Gen., Nashville, Will Terry Abernathy, Dist. Atty. Gen., Selmer, Preston Parks, Asst. Dist. Atty. Gen., Somerville, for defendant in error.

OPINION

DWYER, Judge.

In a consolidated trial of three cases Donald Brooks was found guilty by a jury of committing in one case the offense of murder in the second degree with resulting punishment of confinement for not more than ten years. In the other two cases he

was found guilty of committing the offenses of assault to commit murder in the second degree with resulting punishment in each of confinement for not more than one year. The judgments of punishments pronounced on the verdicts were ordered by the trial court to run consecutively.

The defendant has seasonably perfected this appeal through retained counsel. Several assignments of error have been made and will be evaluated after a narration of the facts as we find them from our review of this voluminous record.

On the evening of September 4, 1970, Donald Brooks and his brother-in-law entered Stanley's Kitchen, a restaurant located in Ripley. While seated at the counter an argument ensued between Brooks and another customer about Brooks kicking the other customer on his ankle. The record reflects that Brooks started using profanity and was ordered to leave the restaurant. At this time the proprietress threw a glass of water in the defendant's face and when he grabbed her by the arm defendant was struck on the head with an ashtray by a customer. Defendant received other blows in the fight. He then went outside to a tool box in the trunk of his car and returned with a straight razor. He slashed a customer not involved in the dispute, then grabbed the deceased by her hair and slashed her throat from which death swiftly followed. He then slashed another woman customer stating, "You're the one that threw water in my face". He was again struck by one of the men involved in the initial argument. When the police arrived they found Brooks in the restaurant bleeding profusely from the head, with razor in hand. At the officer's command he put the razor in his pocket and surrendered. He was taken to a hospital where it was ascertained a branch of his temporal artery had been severed and from this wound and loss of blood defendant was in severe shock.

The defense of defendant's conduct is predicated upon his total loss of memory attributed to the blow or blows on his head. Hence his plea is that of not guilty by reason of insanity at the time. The defense introduced four medical doctor witnesses, all specialists in the field of psychiatry. One doctor, the director of the maximum security unit of the Central State Psychiatric Hospital at Nashville, related that after a sixty-day observation his staff unanimously agreed that because of the blow Brooks had retrograde amnesia. They were of the opinion that he suffered a concussion and therefore could not distinguish between right and wrong at the time of the offenses. The other three doctors interviewed Brooks each one time in interviews ranging from an hour to two hours. These three interviews occurred months after the offenses. They were of the opinion Brooks had amnesia and also in their opinion could not distinguish between right and wrong at the time.

The State other than cross-examination offered no rebuttal expert medical witnesses to counter this expert medical opinion testimony presented by the defendant.

The law presumes sanity. Stuart v. State, 60 Tenn. 178, 182. The issue paramount in this record is therefore this: does the expert opinion testimony in this record preponderate over the presumption of law that Brooks was sane at the time, plus any factual indications of sanity contained in the record, to such an extent that the jury could not have found the defendant sane and guilty beyond a reasonable doubt? We hold that in this record the opinion testimony does not so preponderate. We reason that the issue of sanity addresses itself to the jury, that is, it is for them solely and exclusively to decide whether or not, under the facts and circumstances in the proof, including the medical opinions, and under proper charge of law, the defendant was sane or insane at the time. This issue as we view the scene is not unlike the main issue of guilt or innocence: it is a fact issue for the jury. Mullendore v. State, 183 Tenn. 53,

62, 191 S.W.2d 149. The jury's verdict here indicates that they found the defendant guilty and that at the time he was sane; that is, he met the standard of having the mental ability to distinguish between right and wrong at the time. See Spurlock v. State, 212 Tenn. 132, 368 S.W.2d 299. See also the thorough and well reasoned opinion by Judge Oliver of this court, on a factual situation and issues similar to those at hand, in Sparkman v. State, Tenn.Cr.App., 469 S.W.2d 692.

The argument is put forth that the opinions of the psychiatrists neutralize the presumption of sanity and therefore the jury is in reasonable doubt, citing Dove v. State, 50 Tenn. 348, 371. We do not read Dove v. State, supra, in such a limited light. That case was reversed because of an erroneous charge of law which in effect put the burden on the defense to prove insanity beyond a reasonable doubt. In the Dove trial the charge *required* the jury to *find sanity* ". . . if the proof left their minds in equipoise as to the sanity or insanity of the defendant . . .". But we note that the Dove opinion, in finding such an instruction to the jury to be in error, does not in any way remove from the jury's province the determination of the issue of sanity. Nor does Dove, or any other opinion in our view, require in all cases rebuttal expert opinion testimony to counter defense expert opinion testimony. The law is simply that the jury resolves the sanity issue, considering all the evidence pertinent to the issue.

The argument is made that the jury could not arbitrarily disregard the testimony of the psychiatrists. As we view the scene neither is the jury required to believe this expert opinion, the admissibility of which is in itself an evidentiary exception to our rule of evidence prohibiting opinion testimony. The verdict indicates that the jury to some extent weighed the testimony of the doctors by its not finding defendant guilty of murder in the first degree, not that is, that the killing was a cool, deliberate and rational act of the defendant at the time. To accept the defendant's urging we would effectively preempt our jury trial system on sanity issues and replace it with a system of trial by psychiatrists' opinions. We are unwilling, even if we had the power, to saddle society with so basic a change in our system of criminal jurisprudence. See Spurlock v. State, supra. The assignments predicated on the argument that defendant had successfully rebutted the presumption of sanity are overruled.

■ Defendant next contends that the evidence does not support the verdicts. When he got the razor out of the trunk of his car and reentered the cafe and slashed the three people with this weapon, malice is implied or inferred. When there is shown in the proof a killing and assaults as here the main ingredient to sustain the charge, malice, has been shown. See Gann v. State, 214 Tenn. 711, 721, 383 S.W.2d 32.

■ In viewing these assignments pertaining to the evidence we do so under settled rules of law that the jury's verdict has resolved the testimony of the witnesses. It has removed the presumption of innocence and in this court defendant is under a presumption of guilt and must show that the evidence preponderates against his guilt and in favor of his innocence. See Cooper v. State, 123 Tenn. 37, 56–60, 138 S.W. 826. Our review of the evidence shows a sufficiency to sustain this verdict. The defendant's lifelong conduct of compliance with the laws of society, his successful achievement of a substantial education and civil service employment, his lack of previous mental medical history, his rational conduct immediately before and shortly after arriving at the restaurant, his ability to locate the razor in a tool box in the trunk of his car, his recollection of the water being thrown in his face, his prompt willingness to submit to superior force when confronted with the policeman's pis-

tol, and his psychiatric history since the events, are all items of evidence that were available for the jury's consideration, along with opinions of the psychiatrists regarding his insanity. In view of the total picture presented by all of the evidence, we are unable to conclude that the jury arbitrarily disregarded the doctors' opinions, or that the evidence of insanity preponderated against that of sanity. The assignments regarding the evidence are overruled.

Defendant next contends the court erred in not charging his special request of law on insanity:

"A person is not responsible for criminal conduct if at the time of such conduct as a result of mental defects he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law."

Such charge has been approved in some of our Federal circuits.

The court in this record fully and adequately charged the law on insanity in this State which follows the McNaghten rule referred to as the right from wrong test. See Spurlock v. State, supra. As an intermediate court we are bound to follow settled rules of law by our Supreme Court's adjudication. The trial court was not in error in refusing to charge the request. The assignment is overruled.

Defendant lastly contends the trial court erred in allowing the husband of the deceased to sit in the vicinity of the counsel table and to testify without being sequestered. We hold that this matter of control of witnesses is within the discretionary authority of the trial court and that in this matter in this case the trial court did not abuse his authority. See Nance v. State, 210 Tenn. 328, 334, 358 S.W.2d 327 and Phillips v. Henderson, 220 Tenn. 701, 705, 423 S.W.2d 489. The testimony of the deceased's husband was cumulative and the defense chose not to cross-examine the witness. The assignment is overruled.

The judgments of the trial court are affirmed.

RUSSELL and O'BRIEN, JJ., concur.