**Orville PERKEY, Petitioner,**

v.

**Harold J. CARDWELL, Warden,
Respondent.**

**Civ. A. No. 72–463.**

United States District Court,
S. D. Ohio, E. D.

Feb. 9, 1973.

Alphonse P. Cincione, Columbus, Ohio, for petitioner.

William Brown, Atty. Gen., by Leo J. Conway, Asst. Atty. Gen., Columbus, Ohio, for respondent.

## OPINION AND ORDER

KINNEARY, Chief Judge.

Petitioner, a state prisoner, brings this action for a writ of habeas corpus under the provisions of Title 28, United States Code, Section 2241(c)(3).

This matter is before the Court on respondent's motion to dismiss on the ground that the petition fails to state a claim for relief in federal habeas corpus.

On November 15, 1963, petitioner was indicted by the Knox County Grand Jury for one count of first degree murder in violation of § 2901.01, Ohio Revised Code, and two counts of shooting with intent to wound in violation of § 2901.-23, Ohio Revised Code. On November 26, 1963, petitioner entered pleas of not guilty and not guilty by reason of insanity to the charges in the indictment. Petitioner was committed to the Lima State Hospital for observation to determine his present sanity and his sanity at the time the alleged offenses were committed.

On January 6, 1964, the Knox County Common Pleas Court appointed Dr. Dwight E. Palmer to examine petitioner to determine his mental condition. On January 11, 1964, Dr. Palmer submitted a written report in which he stated:

## OPINION

1) Under the M'Naghten Rule he is not competent or responsible with respect to the death of Richard Merrin. His idea of right and wrong at the time was not based upon reality but

upon insane delusions of omnipotence and persecution. He carried out the act of shooting with the thought that he was carrying out God's orders.

2) His present mental condition is such that he lacks the capacity to stand trial. He thinks that he has done no wrong and that he has no need for a lawyer, although he knows the function of an attorney in such a situation.

In summary, he was mentally ill and incompetent on October 30, 1963, and on January 11, 1964. I have every reason to believe he was insane before October 30th and that he will be as long as he lives.

On January 22, 1964, the Knox County Common Pleas Court held a sanity hearing at which it determined that petitioner was not presently sane. Petitioner was committed to the Lima State Hospital until he should be returned to reason.

On January 27, 1970, the Knox County Common Pleas Court again appointed Dr. Palmer to examine petitioner. Dr. Palmer filed a written report dated February 7, 1970 in which he stated:

## OPINION

After making this psychiatric examination of Orville W. Perkey, it is my professional opinion that his diagnosis at present is schizophrenia, paranoid type, in clinical remission.

The term remission is used rather than cure because remission does not necessarily imply permanent cure. However, it is my opinion that Mr. Perkey is now able, from the mental standpoint, to stand trial, for the murder with which he was charged in 1963.

He knows the nature of a trial, his status as the accused, the charge against him, and the functions of any attorney who might be chosen or assigned to him as his legal representative at the trial.

On March 4, 1970, the Knox County Common Pleas Court held a sanity hearing. Dr. Palmer and Dr. Alexander Chomyn, a staff psychiatrist at the Lima State Hospital, both testified that petitioner was restored to reason and was able to stand trial. The Knox County Common Pleas Court found that petitioner was restored to reason and capable of standing trial. Petitioner entered pleas of not guilty and not guilty by reason of insanity.

On June 15–17, 1970, petitioner, represented by counsel, was tried before a Three-Judge Court. The Court returned a verdict of guilty as to each of the counts in the indictment, with a recommendation of mercy as to the charge of first degree murder. In its decision and verdict the Three-Judge Court found as to each count in the indictment that:

On the evidence adduced that at the time of the commission of the offense the defendant knew the wrongfulness of his conduct, and at that time did have the ability to refrain from doing the act charged in the indictment.

On June 22, 1970, petitioner filed a motion for a new trial. The sole ground raised was the allegation that petitioner had established by a preponderance of the evidence that he was legally insane at the time of the commission of the offenses charged in the indictment and that there was no evidence to the contrary. On September 27, 1971, the Knox County Common Pleas Court overruled the motion for a new trial.

Petitioner filed a notice of appeal in the Ohio Fifth District Court of Appeals. On May 22, 1972, the Court of Appeals affirmed the judgment of conviction holding that:

After consideration of the entire record we find the decision and verdict of the Three-Judge panel that it was not shown by a preponderance of the evidence that the defendant was at the time of the incident, insane, rather that at the time of the commission of the offense he knew the wrongfulness of his conduct, and at the time did have the ability to refrain from doing the act charged, to be sustained by sufficient evidence. We find the evidence sufficient to support, by

proof beyond a reasonable doubt, each of the elements of the charges of each indictment and that the decisions and verdicts are not contrary to law.

Petitioner filed a motion for leave to appeal in the Ohio Supreme Court. On September 8, 1972, the Ohio Supreme Court denied the motion for leave to appeal.

A brief summary of the facts underlying petitioner's conviction follows. On October 30, 1963, between 12:00 and 12:30 p. m., petitioner entered the advertising room of the Mount Vernon News and pointed a loaded .20 gauge shotgun at his divorced former wife, Peggy Walker. She begged the petitioner not to shoot her. Dick Merrin looked up from his desk in the advertising room and said, "What." Petitioner turned toward Merrin, pointed the shotgun at him and said, "Strip." Petitioner then shot Merrin, killing him instantly.

Miss Walker hid under a desk. Fellow employees responded to her screams. In the ensuing confusion, petitioner shot Malcolm Francis and Joe Poljak. Petitioner escaped from the premises. He was apprehended in Galion, Ohio in possession of a loaded .20 gauge shotgun and 27 shotgun shells.

Dr. Palmer testified that when he interviewed petitioner in January, 1964, it was his belief that petitioner was convinced that he was the "chosen son of God" and that it "wasn't wrong for the Christ-child to kill." Dr. Palmer testified that he:

felt that Mr. Perkey was giving him a true story of his appreciation of the world in which he was living on this particular date and his emotional reactions on that date and of his activities on that date. I felt that his feelings on the day of this shooting, his thinking and his behavior were those of psychotic individual. You would use the term insane.

It was Dr. Palmer's professional opinion, to a reasonable medical certainty, that on October 30, 1963, petitioner was a schizophrenic, paranoid type, severe chronic.

Dr. Alexander Chomyn, a staff psychiatrist at the Lima State Hospital, testified that although the staff of the Lima State Hospital had examined petitioner, it was unable to determine his condition at the time of the offense.

The testimony of Margaret Loris, the personnel director at petitioner's former place of employment, and petitioner's brothers, Cecil Perkey and James Perkey, tended to corroborate Dr. Palmer's diagnosis.

Peggy Walker, petitioner's former wife, testified that petitioner once told her:

That he felt he could shoot me and everybody would think he was crazy and he would go to the mental institution and later be released.

Miss Walker testified that it had never occurred to her during the time that she was married to petitioner that he might be mentally ill. Rather, she believed that he was just "mean." She testified that on many occasions during the time they were married he threatened and beat her.

Many of the eyewitnesses of the killing and subsequent shootings testified that petitioner acted with deliberation and did not outwardly appear to be nervous.

Petitioner herein contends that he was denied his rights under the Sixth and Fourteenth Amendments to the Constitution of the United States in that the evidence at trial clearly, and without contradiction, established that he was insane at the time of the killing and shootings charged in the indictment; and that he was denied due process of law and his right to a fair trial when the Three-Judge Court found him guilty.

Petitioner argues that at trial he established by a preponderance of the evidence that he was insane at the time of the commission of the offenses for which he was convicted. Petitioner relies upon the decision in Noble v. Sigler, 351 F.2d 673 (8th Cir. 1965) for the

proposition that a state court defendant cannot be constitutionally convicted of a crime if he was insane at the time of the commission of the offense. In *Noble* the Eighth Circuit Court of Appeals stated:

> There is no doubt but that the common law rule declaring that an "insane" person cannot be validly tried or convicted of crime is enforceable against the state by way of the "due process clause" of the Fourteenth Amendment. Massey v. Moore, 384 U.S. 105, 75 S.Ct. 145, 99 L.Ed. 135 (1954); Thomas v. Cunningham, 313 F.2d 934 (4th Cir. 1963).

The issue of the defendant's sanity had not been adjudicated in the State trial court in *Noble*. In the instant case, the State trial court made a determination not only that the petitioner was sane to stand trial, but also that he was sane at the time he committed the offenses for which he was convicted.

▪ Petitioner contends that the trial court's determination was erroneous. It is the general rule that questions of the weight and sufficiency of the evidence are not cognizable in federal habeas corpus. Ballard v. Howard, 403 F.2d 653 (6th Cir. 1968); Fernandez v. Klinger, 346 F.2d 210 (9th Cir.) cert. denied, 382 U.S. 895, 86 S.Ct. 191, 15 L.Ed.2d 152 (1965). However, where the record is totally devoid of evidentiary support, the conviction is in violation of the due process clause of the Fourteenth Amendment. Gregory v. Chicago, 394 U.S. 111, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969); Garner v. Louisiana, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed. 2d 207 (1961); Thompson v. Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960); *see also*, In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

The rule governing proof of insanity in Ohio and the burden of proof is set forth in the syllabi of State v. Staten, 18 Ohio St.2d 13, 247 N.E.2d 293 (1969):

1.  One accused of criminal conduct is not responsible for such conduct if, at the time of such conduct, as a result of mental disease or defect, he does not have the capacity either to know the wrongfulness of his conduct or to conform his conduct to the requirements of law. [Citations omitted]

2.  In order to establish the defense of insanity where raised by plea in a criminal proceeding, the accused must establish by a preponderance of the evidence that disease or other defect of his mind had so impaired his reason that, at the time of the criminal act with which he is charged, either he did not know that such act was wrong or he did not have the ability to refrain from doing that act.

In the instant case, the prosecution proved beyond a reasonable doubt each and every element of the crimes of first degree murder and, with respect to both counts, the crime of shooting with intent to wound.

The trial court specifically found in conformance with the rule set out in State v. Staten, *supra*, that petitioner was not insane at the time that he committed the offenses for which he was convicted. This decision was affirmed by the Court of Appeals after a careful review of the trial court record. The Ohio Supreme Court then denied petitioner's motion for leave to appeal.

▪ The question before this Court is limited to a determination of whether or not the record is totally devoid of evidentiary support for the state court decisions.

The trial court had an opportunity to view the demeanor of the witnesses. It chose to reject the psychiatric testimony of Dr. Palmer. Although Dr. Palmer was the only expert witness who testified on the issue of petitioner's sanity, his expert opinion was not absolutely binding on the trial court. The facts underlying the psychiatrist's opinion are the ultimate issue, not the psychiatrist's opinion itself. The criminal defendant has the burden of establishing by a pre-

ponderance of the evidence the fact that he had a defective mind or that he did not have the ability to refrain from so acting. The trial court found that petitioner did not prove either of these ultimate issues of fact by a preponderance of the evidence. Neither the trial court nor the Court of Appeals articulated the facts upon which it relied in reaching that decision.

The evidence supporting the result is mainly inferential. The trial court apparently believed that the deliberate nature of petitioner's act belied an ability to know the wrongness of the act or an inability to refrain from doing the act. In addition, there is the testimony of Miss Walker that the petitioner had once told her that he had considered shamming insanity.

This Court cannot substitute its judgment on the facts for that of the trial and appellate courts. There is evidence supporting the state court determination, and therefore the conviction is not in violation of due process of law.

Whereupon, the Court holds that the motion is meritorious, and therefore it is granted.

This action is hereby dismissed.