**Donald BROOKS, Petitioner-Appellant,**

v.

**James H. ROSE, Warden, Respondent-Appellee.**

No. 74–1843.

United States Court of Appeals, Sixth Circuit.

July 30, 1975.

Russell X. Thompson, Memphis, Tenn. (Court-appointed), for petitioner-appellant.

R. A. Ashley, Atty. Gen. of Tennessee, W. Henry Haile, II, Nashville, Tenn., for respondent-appellee.

Before WEICK, McCREE and ENGEL, Circuit Judges.

WEICK, Circuit Judge.

Donald Brooks, an inmate of the Tennessee State Penitentiary in Nashville, has appealed to this Court from an order of the District Court denying his petition for a writ of *habeas corpus*.

In three indictments filed in the state court, he was charged with murder in the first degree and with assault on two other persons with intent to commit murder in the first degree. He was represented by retained counsel and entered pleas of not guilty and not guilty by reason of insanity.

The three indictments were consolidated for trial before a jury. He was found guilty by the jury of second degree murder and guilty of assault with intent to commit murder in the second degree of the other two persons. The jury sentenced him to ten years' imprisonment on the murder conviction and to one year's imprisonment on each of the assault convictions. The state court made the sentences consecutive and they totaled twelve years.

Brooks appealed to the Tennessee Court of Criminal Appeals where his conviction was affirmed. The Supreme Court of Tennessee denied *certiorari. Brooks v. State*, 489 S.W.2d 70 (Tenn.Cr. App.1972).

Brooks then filed in the District Court a petition for a writ of *habeas corpus.* His sole claim was that evidence was totally lacking to establish that he was sane at the time he slashed the throats of two women and one man, with a straight razor, and that his due process rights were thereby violated.

The District Court determined that the case could be heard on the transcript of evidence adduced at the criminal trial and the exhibits. The transcript consisted of five volumes. This procedure has not been questioned.

The District Court heard oral arguments and wrote a Memorandum Opinion and Order in which it discussed at length the facts of the case and the legal issues involved. There is no issue over exhaustion of state remedies.

It was undisputed that Brooks, with a straight razor, did slash the throats of Mrs. Nina Minor, her husband, Cave Minor, and Mrs. Marjorie Almond. Mrs. Minor died at the scene. Mr. Minor and Mrs. Marjorie Almond recovered.

Brooks' only defense was that he was temporarily insane at the time he slashed the throats of the two women and one man with his straight razor. To support this defense he relied on the testimony of four psychiatrists, three of whom examined him while he was in the county jail. The state called no expert testimony on this issue. Instead, it relied on the words and acts of Brooks prior to, during, and after the slashings, and the totality of all the evidence in the record, all of which it claimed required submission of the issue of temporary insanity to the jury for determination under Tennessee law.

Brooks contends that there was not an iota of evidence in the record to support the jury's verdict that he was sane at the time of the slashings. This is the sole issue in the case.

■ The general rule is that the sufficiency of evidence to sustain a conviction in a state court prosecution is not reviewable in a Federal *habeas corpus* proceedings. *United States, ex rel. Johnson v. Illinois*, 469 F.2d 1297, 1300 (7th Cir. 1972), *cert. denied*, 411 U.S. 920, 93 S.Ct. 1560, 36 L.Ed.2d 313 (1973); *Robinson v. Wolff*, 468 F.2d 438, 440 (8th Cir. 1972); *Ballard v. Howard*, 403 F.2d 653, 654 (6th Cir. 1968). However, a conviction which is totally devoid of evidentiary support as to a crucial element of the offense is unconstitutional under the Due Process Clause of the Fourteenth Amendment. *Vachon v. New Hampshire*, 414 U.S. 478, 94 S.Ct. 664, 38 L.Ed.2d 666 (1974); *Thompson v. Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960); *Phillips v. Neil*, 452 F.2d 337, 342 (6th Cir. 1971). Such a claim is reviewable in a federal *habeas corpus* proceeding.

The instant case, we believe, illustrates the difficulty a *habeas corpus* petitioner will have in applying the standards of *Thompson v. Louisville, supra,* and similar cases, where the only issue at the petitioner's trial was his mental state at the time of the acts charged.

The question before this Court is limited to whether the record contains any relevant evidence whatsoever to support the jury's finding, implicit in its verdicts, that Brooks was sane under Tennessee law at the time he committed the acts for which he was tried.

■ For determining insanity Tennessee applies the M'Naghten Rule

which is the ability to know right from wrong. *Spurlock v. State,* 212 Tenn. 132, 368 S.W.2d 299 (1963). Under this Rule the defendant has the burden of making out a *prima facie* case that he was insane at the time of the offense. *Spurlock v. State, supra,* at 134, 368 S.W.2d 299; *Mullendore v. State,* 183 Tenn. 53, 60, 191 S.W.2d 149 (1945); *King v. State,* 91 Tenn. 617, 647–648, 20 S.W. 169 (1892); *Stuart v. State,* 60 Tenn. (1 Baxter) 178 (1873).

▣ A defendant who has proven a *prima facie* case of insanity is entitled to acquittal under Tennessee law if from "all the proof in the case [the jury has] a reasonable doubt as to whether the defendant was sane at the time he committed the act charged." *King v. State, supra,* 91 Tenn. at 647.[1]

■ The Supreme Court of Tennessee has held that the words and acts of a defendant immediately before, during, and after the offense are the best evidence of his state of mind at the time of the acts charged. *Mullendore v. State, supra,* 183 Tenn. at 60, 191 S.W.2d 149. Expert testimony concerning the defendant's mental state at the time of the acts charged is received with caution. *Wilcox v. State,* 94 Tenn. 106, 113, 28 S.W. 312 (1894); *Collins v. State,* 506 S.W.2d 179, 184 (Tenn.Cr.App.1973), *cert. denied; Sparkman v. State,* 469 S.W.2d 692, 696 (Tenn.Cr.App.1970), *cert. denied.*

■ *Sparkman* clearly indicates that where testimony as to the facts permits even an inference that the defendant was sane at the time of the offense charged, the jury is entitled to reject expert and lay opinion testimony to the contrary.

■ Merely because the defendant offers favorable expert testimony as to his insanity and the prosecution offers no expert testimony does not require the Court to find for the defendant. *Spark-*

*man v. State, supra; Perkey v. Cardwell,* 369 F.Supp. 770 (S.D.Ohio 1973), *aff'd,* 492 F.2d 1244 (6th Cir. 1974, without published opinion).

The facts are summarized in the Opinion of the District Court. It stated:

The petitioner, a Negro, went into a restaurant in Ripley, Tennessee, and got into an argument with certain white patrons and the proprietor's wife. There is diametrically opposed evidence on who started the argument and who used the profanity and racial epithets. In any event, the argument resulted in assault and ultimate force involving the petitioner and patrons. In the process, the proprietor's wife threw a glass of water in the petitioner's face, and he was struck on the head with a fist or an ashtray or both to the extent that he was bleeding. He then went outside the restaurant to his car, got a razor, came back in the restaurant and slashed three noncombatant customers, killing one of them. After he surrendered to the local police and was taken to the hospital, it was determined that he was near the point of death, due to head and other injuries inflicted on him in the mele at the restaurant.

The District Court further stated in its Opinion:

The State called fourteen witnesses; thirteen of these witnesses had been in the restaurant at the time as employees or patrons. The State's other witness was the policeman who confronted the petitioner at the scene and arrested him.

There is evidence in the record concerning the incident at the restaurant from which a jury could conclude that the petitioner was in command of his faculties and acting with purpose. He did *go from the* restaurant to his automobile, found his keys, opened the

---

1. Brooks relies on *dicta* in *Phillips v. Neil,* 452 F.2d 337 (6th Cir. 1971), but it is clear to us that a jury in Tennessee must consider all of the evidence in the case, without regard to the question at what point in the trial it was produced or who produced it, in determining the

mental condition of the defendant. *Gale v. State,* 81 Tenn. (13 Lea.) 489 (1884); *Collins v. State,* 506 S.W.2d 179 (Tenn.Cr.App.1973), *cert. denied; Sparkman v. State,* 469 S.W.2d 692, 696 (Tenn.Cr.App.1970), *cert. denied.*

trunk, found and retrieved a razor, went back to the door of the car, opened it and either stood there or got in. When he returned to the restaurant and ultimately accosted the Almonds, he apparently remembered that someone had thrown a glass of water in his face. He made an exclamation to the effect that Mrs. Almond was the one who had done it. (Tr. 264) Then, when he was confronted by a policeman drawing his gun from his holster, he had the presence of mind to put his razor in his back pocket. (Tr. 275) When his wife saw him in the hospital he apparently had some recollection of the events that had taken place because he asked her, "Did they get the other two men?" (Tr. 614) It is reasonable to infer that he was referring to the white men with whom he had argued in the restaurant. Also, the jury might have placed stock in the statement of O. D. McBroom that Mr. Brooks suggested killing everyone in the restaurant when he returned with his razor. (Tr. 292) If petitioner were, in fact, undertaking such a project rather than simply trying to get even with those who had set upon him, that would account for the seemingly irrational cuttings of innocent bystanders.[2]

On the other side of the coin there is evidence in the record from which the jury could draw the conclusion that the petitioner did not have command of his faculties and did not know the difference between right and wrong at the time of the incident. Apparently, he had been a model of good citizenship and had never demonstrated a violent nature before this incident. He did receive an injury to his head, and did return to the restaurant and cut three people with whom he did not

have a quarrel, unless, of course, he deemed himself as having a quarrel with all the white people in the restaurant.

Four qualified psychiatrists testified that they did not feel Mr. Brooks was acting deliberately and with knowledge of the difference between right and wrong when the incident occurred. (Tr. 500–600) In addition, Dr. Fidelholtz made the unobjected-to hearsay assertion that his opinion was concurred in by his entire staff at Tennessee Central State Psychiatric Hospital. This psychiatric testimony is evidence that the petitioner was insane at the time of the incident, but there is reason for the jury, having heard all the testimony concerning the incident, not to fully accept the opinions of the psychiatrists. Each psychiatrist was cross-examined extensively. Some of the answers elicited could have detracted from the probative value of their testimony in the minds of the jurors. For example, Drs. Linder, West and Walker only had one interview each with the petitioner, and their background information came from an oral summary by defense counsel and information obtained from records of Central State Psychiatric Hospital. Dr. Fidelholtz had more opportunity to observe the petitioner, but his information of the incident itself came from a rather cursory letter from the prosecuting attorney.[3] All the psychiatrists laid stress on the medical fact that the petitioner received a severe blow to his head, cutting the temporal artery and causing sufficient blood loss to place the petitioner in shock. However, it appears from reading the testimony, none of the medical witnesses were aware of the testimony that the petitioner could

---

**2.** "O. D. McBroom is one of the two white men involved in the initial discussion which erupted into the tragic events. There is a hopelessly irreconcilable difference in the accounts of the initial discussions given by McBroom and the petitioner. These accounts are also inconsistent with portions of the testimony of other witnesses."

**3.** "It should be noted that the petitioner testified and the doctors accepted the fact that he was victim of retrograde amnesia and, therefore, did not know what happened from a time shortly after he entered the restaurant until he woke up in the hospital."

have received a severe blow to his head which severed the artery after the cuttings. Mr. Raymond Almond testified that, after the slashings, he grabbed Mr. Brooks, a "claw hammer come by [him]" and there was "another noise and glass and he went down." (Tr. 271) Mr. McBroom testified that he threw the claw hammer but that it did not hit Mr. Brooks. Mr. McBroom further testified that he hit Mr. Brooks over the head with the ashtray after the slashings. He said that he "tapped him right up beside the head, and he hit the floor." (Tr. 295) Although Mr. McBroom did not say so, Mr. Almond's testimony indicates that the ashtray broke when Brooks was hit. Thus, there is proof that the ashtray was still intact during the scuffle in the dining room. All of this took place after the petitioner had gone to his car, got his razor and cut the innocent people in the restaurant. (6a–9a)

We have reviewed the record and are of the opinion that it supports the factual statements made by the District Court. There was more than an inference that the defendant was sane at the time of the slashings. He may have been enraged.

It appears to us from the testimony which was within the province of the jury to accept, that Brooks received the severe blow to his head, cutting the temporal artery, with the resultant loss of blood and shock, after he had slashed the throats of the three victims. The psychiatrists were under the impression that Brooks had received such injury before the slashings. Their medical opinions, therefore, were based on a misapprehension of the evidence, and consequently were not of much value.

Under Tennessee law the jury was not bound to accept the psychiatrists' testimony, and could disregard it.

The jury, in fixing a light sentence of twelve years for murdering an innocent woman and slashing the throats of two other victims, obviously must have taken into consideration the fact that Brooks had been seriously injured in the affray, and that theretofore he had a good reputation.

Since there was proof in the record to the effect that Brooks was sane at the time of the slashings, we are required under the law to affirm the judgment of the District Court.

Affirmed.

McCREE, Circuit Judge (dissenting).

I respectfully dissent. The question presented by this appeal is whether a jury may arbitrarily disregard overwhelming and uncontradicted expert opinion evidence that a defendant was insane when he committed the act for which he was tried, and find him sane beyond a reasonable doubt solely on the basis of eyewitness testimony of his behavior that afforded no direct evidence of his mental state and permitted only speculative inferences about it. I would hold that this conviction is without evidentiary support of a critical element of the offense charged and that it therefore offends the due process guarantee of the Fourteenth Amendment. *See, e. g., Vachon v. New Hampshire*, 414 U.S. 478, 94 S.Ct. 664, 38 L.Ed.2d 666 (1974).

The fact that the jury imposed sentences totaling only twelve years for the second degree murder of one innocent victim and the assault with intent to murder two other equally innocent persons demonstrates its lack of conviction that appellant, who had been a model citizen before the tragedy in the restaurant, knew the difference between right and wrong when he reacted to the unprovoked assault on his person.

I agree with the statement in the majority opinion that Tennessee has adopted the M'Naghten Rule for determining whether an accused was insane at the time he committed an offense. *Spurlock v. State*, 212 Tenn. 132, 368 S.W.2d 299 (1963). *See also Phillips v. Neil*, 452 F.2d 337, 342 (6th Cir. 1971), *cert. denied*, 409 U.S. 884, 93 S.Ct. 96, 34 L.Ed.2d 141 (1972), where we stated:

In *Davis v. State*, 161 Tenn. 23, 33, 34, 28 S.W.2d 993, 995 (1930), the Tennessee Supreme Court reviewed the

test for the insanity defense in Tennessee:

"The capacity to know right from wrong, and to know that the particular act being committed is wrong, is the rule recognized in this state for testing criminal accountability." *Johnson v. State, supra* [100 Tenn. 254, 45 S.W. 436].

This is a definite holding that an insane delusion does not excuse from crime in Tennessee, unless accompanied likewise by perceptional insanity. Irresistible impulse influenced by an insane delusion is therefore a defense not known to our law, as long as the faculty remains to distinguish between right and wrong. The general rule is that if a defendant has capacity and reason to enable him to distinguish the difference between right and wrong as to the particular act he is then doing, he is criminally responsible for such act. Some of our later cases are *McElroy v. State*, 146 Tenn. 442, 242 S.W. 883; *Watson v. State*, 133 Tenn. 198, 180 S.W. 168, and *Bond v. State*, 129 Tenn. 75, 165 S.W. 229.

\* \* \* \* \* \*

The right and wrong test above mentioned was authoritatively laid down in McNaughten's Case, 1 C. & K., 130, 8 Eng.Reprint, 718.

See also, *Temples v. State*, 183 Tenn. 531, 194 S.W.2d 332 (1946) and *Gibbs v. State*, 192 Tenn. 529, 241 S.W.2d 556 (1951).

And I agree that the Tennessee courts have stated that the words uttered and the acts performed by an accused at the time of an offense are the "best evidence" of his state of mind, *Mullendore v. State*, 183 Tenn. 53, 60, 191 S.W.2d 149, 151 (1945), and that expert testimony about an accused's mental state should be received with caution. *Sparkman v. State*, 469 S.W.2d 692, 696 (Tenn. Cr.App.), *cert. denied,* Tennessee Supreme Court (1970).

At the same time, however, as we recognized in *Phillips v. Neil, supra,* at 342, in

[a]pplying . . . [the M'Naghten Rule], Tennessee courts have held that once the defense has made out a *prima facie* case of insanity in the terms of the M'Naghten Rule the State must in order to overcome the defense offer evidence in rebuttal which demonstrates beyond a reasonable doubt the sanity of the defendant. *Dove v. State*, 50 Tenn. 348, 3 Heisk. 348 (1872); *Stuart v. State*, 60 Tenn. 178, 1 Baxt. 178 (1873); and *King v. State*, 91 Tenn. 617, 20 S.W. 169 (1892). See also, *Jordan v. State*, 124 Tenn. 81, 135 S.W. 327 (1910) and *United States v. Horne*, 304 F.Supp. 727 (D.C.1969).

Although in *Phillips v. Neal,* we reversed the conviction on another ground, we held not only that there was no evidence that proved the accused's sanity beyond a reasonable doubt but also that there was none that even cast a substantial doubt on the accused's *prima facie* case of insanity.

In the appeal before us, four psychiatrists,[1] employees of the state and persons of unquestioned impartiality, testified in great detail and with great care that appellant was insane within the meaning of the M'Naghten Rule. Appellant thus indisputably established a *prima facie* case, and the prosecution was then required to present evidence that appellant knew the difference between right and wrong at the time of the homi-

1. Four psychiatrists testified that Donald Brooks was insane and did not know right from wrong at the time of the offense. These psychiatrists were: Dr. Jacob N. Fidelholtz, director of maximum security unit, Central State Psychiatric Hospital; Dr. Hilary Linder, private psychiatric specialist at St. Joseph Hospital in Memphis, Tennessee; Dr. Harold M. West, associate professor in the Department of Psychiatry, University of Tennessee College of Medicine; and Dr. Parks Walker, staff psychiatrist at Tennessee Psychiatric Hospital. In addition to the testimony of these doctors, Dr. Fidelholtz's diagnosis was unanimously concurred in by six qualified staff personnel at Central State Psychiatric Hospital in Nashville, Tennessee.

782

cide. The state produced no such evidence.

Although evidence of the appellant's actions and utterances during the melee might have some marginal relevance to his ability for deliberate performance, it is not, in this case, probative of his ability to tell right from wrong, and the presumption of sanity was rendered inoperative by appellant's psychiatric evidence.

Although evidence of substantially contemporaneous utterances and acts may, in some cases, be relevant to the issue whether an accused knew right from wrong, the difficulty with the majority opinion is that it fails to distinguish the question of sanity from the question whether appellant acted purposefully, and not accidentally, and it fails to show how any of his actions or utterances during the period in question bear on the issue whether he could tell the difference between right and wrong.

Accordingly, although I am in general agreement with the recital of the historical events in the majority opinion and with its general statement of Tennessee law, I disagree with its conclusion that appellant was not deprived of a right protected by the Constitution.

Upon an examination of the record, I cannot find any evidence that Brooks was sane at the time he slashed the throats of the patrons at the cafe, and a conviction based on no evidence cannot stand. Accordingly, I would hold that his conviction therefore violated due process of law. *See Vachon v. New Hampshire, supra; Garner v. Louisiana,* 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961); *Thompson v. Louisville,* 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960). I would reverse and grant the relief requested in the petition for *habeas corpus.*