Haywood, J.
delivered the opinion of himself and of Whyte, J.
William T. Lewis made his last will and testament and died. In it were the following devises: “Also my will is, that all the remaining part of my lands not sold or otherwise disposed of, be equally divided between my surviving daughters.
“It is my will that shall either of my daughters be dead, or die without issue, that the beforementioned lands shall be divided between the surviving ones.”
*371 Charlotte, one of the four daughters, died, leaving the daughter of one of the four deceased, and four children of another sister deceased, who was not one of the four, all living. And the question is, in what proportions do the lands descend to them, which she took under these devises? The only daughter of the one, claims the one half, as standing in the place of her deceased mother; whereas the children of the other say, that she is entitled only as next of kin to one fifth of the whole. And a question is also made, whether a limitation over to the surviving daughters is not void, for if so, then the mother of the four defendants, being not one of the four de-visees, will take, on the death of each of the four, a share with the survivors, or if dead, her children will take it That is to say, on the death of the first of the four, one fourth part, and so on the death of the second of them, one third part, and so on.
If we ask what was the meaning of the testator, all mankind will give the same answer. It was, that if one of the four should die, without issue, living at her death, that her share should go to the survivors.
It is said the law will not suffer this intent to take effect, because in England “die without issue” cannot make a fee, for that would be alienable Jnstanter, and disappoint the issue; whereas the intent was, that it should go to the issue; which no otherwise can be effected than by construing these words to be an estate in tail which will descend to the heirs of the body, or issue. Therefore, it is said, that by this limitation, the devisees took estates tail with cross remainders, which by the act of 1784, ch. 22, sec. 5, are converted into fees simple. To this we answer, that by the law of England, a devise to B C and D, and if any of them die without issue, then over to the survivors, would be an estate tail with remainder over. 9 East, 385. Nevertheless, if it were added as here, “equally to be divided amongst the survir yors,” the limitation over to the survivors would be a *372 S°od executor7 devise. First, by the words ato be divided amongst the survivors,” for here is plainly contemplated an act to be done in the lifetime of the survivors; which shows the meaning of the devisor to be, that the failure of issue shall be in the lifetime of the survivors. If it were to the survivors for life, the words “die without issue” would be restored to their natural meaning. If it were to be divided in their lifetime, it would be equally restrictive. And are not the words “to be divided amongst them,” equally restrictive? Can the lands be divided amongst them after their death? In 3 Brown’s Chancery Reports, 81, 82, these words were deemed restrictive, and supported the executory devise. The rule is correctly laid down in Fearne, 372, namely, that the words “die without issue,” import an indefinite failure, but that such words may be confined to a dying without issue then living, by any clause or circumstance which can indicate or imply such intention. One of which circumstances, in our opinion is, that the estate limited over to the survivors is to be divided amongst them. Fearne, 369. Wilmot, 298, a similar case. And we think furthermore, that if the words were “to the survivors,” without the additional words “to be divided amongst them,” that this also would be a restrictive circumstance. With respect to personalty, it was so considered in Nichols vs. Skinner, Prec. Ch. 528: Nichols vs. Hooper, 1 Pr. Wms. 199: Hughes vs. Sayer, 1 Pr. Wms. 534. The same word “survivors,” assisted the decision in another case, (7 Term Rep. 589;) and in the case of realty was decisive in making the restriction, in 3 Johnson, 292: 10 Johnson, 12: 11 John. 337-8, and in 16 Johnson, 382. In this Stale we ought to adhere to these decisions. For the rule is, that in order to effectuate the intent of the devisor, it shall be good by way of executory devise, if by no other means it can be. Com. Rep. 374, 375. And here if it be not construed an ex-ecutory devise, it will wholly fail. For it will be an estate *373 tail converted by the act of 1784, ch. 22, into afee, and the remainder be wholly defeated; ergo, to preserve the intent, it must be an executory devise and not a remainder. Secondly, we ought to adhere to these decisions, because in England “die without issue” makes an estate tail to effectuate the intent of the devisor; for otherwise the estate would be a fee, and instanter alienable from, the issue, but being an estate tail, would descend to them, and the intent was that it should go to them. But here it cannot go to them, though it be an estate tail, which the law instantly converted into a fee. “Die without issue,” when already there is a fee without these words, by the act of 1784, ch. 22, sec. 14, arenotinthis State necessarily words of limitation, as in England they are to answer the intent, but may be taken to denote a future event. As if an estate be given to A and his heirs, and if B die without issue, then to C. If it be asked, why in the case óf personalty these words are restrained by a limitatation over to survivors, but in realty not, the answer is, because in personalty they cannot make an estate tail, there being no such estate in a chattel. Then if there be no such estate in the realty in this State since 1784, will not the word “survivors” be restrictive in the latter case, as well as in the former? The New York decisions in the Senate and in their other courts, are exactly suitable to our circumstances, and for that reason ought to be followed, rather than the .British decisions, for which there is good reason there, but none here, owing to the changes made in our own law.
Another mistake must be noticed. A limitation over to survivors, it is said, was never insisted on, even by counsel, as restrictive of the words “die without issue.” If this were correct, it would go far to show that such limitation is not restrictive. But it is very far from correct. In the case of personalty, it has been held so whenever it occurred, as the cases already cited show. In the case of realty the distinction is, if the limitation to *374 survivors be for life expressly, or without superadded words of inheritance, which is an estate for life, then such limitation over to survivors is restrictive. In 7 Term Rep. 5S9, the limitation over was to survivors, without- any words superadded. And Lord Kenyon, in delivering the opinion of the court, said, “on looking through the whole of this will, we have no doubt the testator meant that the dying without issue was confined to a failure of issue at the death of the first taker; for the persons to whom it was given, were then in existence, and life estates only are given to them..” In 1 East, 263, Lord Kenyon remarked upon this decision, “that the limitation over was of estates for life.” But it must be remarked here, for the sake of strict accuracy, that the same reason cannot weigh in this State; for, by the act of 17S4, ch. 22, sec. 14, the same limitation over to survivors, would be an estate in fee, and not an estate for life. At the same time, however, that in this point of view the clause operates against the survivors, yet considering that by section fifth, there cannot be an estate tail here, and that the estates of less dignity, contemplated by the act of 1784, ch. 22, sec. 14, must of necessity be estates for lives or years, there is another reason, equally forcible, which preserves the limitation over to the survivors, upon the same principle that in personalty it is so preserved, namely, that there being at the date of this will no' such estate as an estate in tail, these words “die without issue,” following a fee, are not words of limitation, cutting it down to an estate tail, but as in the case- of personalty are words, of contingency, which are restrained by a limitation over to survivors, to a life or lives in being. And upon the whole clause taken together, the result is the same as it was in the English law before the act of 1784, that a limitation over to survivors is restrictive. These mistakes would not have been noticed, but for the indispensable purpose of showing what the law really is, and of administering it, as it really is, to the parties in *375 this cause; and only such of them are mentioned as could J J not be passed by.
We next come to the act of descents. Under that, the • / question is, do the nephews and nieces take^er capita or per stirpes? Our opinion is, that they take per stirpes. Take the act of descents upon its own grounds, unencumbered with any other act, the proviso in the case of lineal descents is, “that if any child shall have died in the lifetime of the parent, his or her lineal descendants shall be held to represent him, and shall stand in the same place,” &c. Does this authorize any other representation than that of the child of the intestate? If not, the son alone is to be in jure proprio, and hig descendants by representation are as standing in his place, and .none of them in jure proprio. It must be as next of kin, and that character is not mentioned in the clause in question.
When we come to collateral descents, the case is the same, for the descent is to be to brothers and sisters, provided that if any brother or sister shall have died in the lifetime of the intestate, leaving issue, such issue shall represent their deceased parent, &c. When the descendants of brothers and sisters are to take by representation, shall we arbitrarily say that they take as next of kin? It is impossible to maintain any such position without going in direct contravention of the act.
To the argument to support the division per capita, that under the act of distributions nephews and nieces take per capita, the answer is', that the act of distributions divides it. In the case of collaterals, it says, if no child, then to the next of kindred in equal degree, &c. and nephews and nieces," their parents being dead, are the next of kin. Does it follow, because they take as next of kin, that those who are to take'by representation shall take as next of kin too? If to take by representation and to take as next of kin be the same thing, then the argument is sound, but otherwise it is preeminently incorrect.
*376 Another argument perfectly incorrect, with the former, is, that the descendants of brothers, who take by representation, are to be governed by the same rule as descendants of the son, who take by representation. This position is most undoubtedly correct. But then the argument proceeds, and in the case of lineals says, the act of distribution which is worded as is the act of descents, concerning lineals, says the grand sons take per capita, their fathers being dead] ergo, the sons and grandsons of brothers, under the act of descents, take per capita when the parents are all dead. The inference here also is correct, if the premises be true; but most unfortunately for the argument, the premises are not true. The authority relied upon in support of them, is Toller, 295. “If A, says he, have three children, B, C and D, and they all die, B having two children, C three, and D four, they take as next of kin per capita, and he cites in the margin a string of cases, all of which have’ been carefully examined, and they are all cases of collateral succession, and of course cannot be any authority for the position he has taken, which is neither supported by the statute, or any one adjudged case .to be found. There is no case to show that he who takes by representation, takes as next of kin, and no one ever took as next of kin unless the statute directed that the next of 'kin should take. There cannot be a clearer position than this, that he who takes by representation, takes as standing in the place of the person represented.
When the first of the four devisees died without issue, her fourth part or share went by the will in thirds to the survivors, one third to each. And when the second sister died, that third being no longer under the direction of the will, descended in thirds to the two of the four survivors, and the children of Mrs. Claiborne, the said children in right of their mother taking one third;_but this point is not now before us for decision, and must be settled by an ejectment brought for the purpose. The real estate of *377 Mrs. Baker, formerly Charlotte Lewis, now deceased, must be divided, one half to the daughter of Mrs. Lewis, deceased, one half to the children of Mrs. Claiborne, in equal proportions, subject as to the one third of the one fourth which came on the death of the first sister who died, to be divided into three parts, and one of said three parts to be assigned to the children of Mrs Claiborne, and the residue to be divided as before stated, (2Ver. 388,) after the same shall have been recovered in ejectment, if the parties will elect to have a trial at law: in other words, the one half of that third that shall go by devise into the hands of the daughter of Mrs. Lewis, shall be liable to the claims of Mrs. Claiborne’s children, as this decree had never been made, and shall be in no wise prejudiced thereby.
Emmerson, Judge,
was of opinion that the words “die without issue” were not restricted by the words “to be divided,” &c. nor by the word “survivors.” Upon the act of descents he concurred, that the lands of the intestate descended per stirpes.
Decree accordingly.