STATE of Tennessee, Appellee,

v.

**Jimmy W. HAMMOCK, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

May 6, 1993.

Rehearing Denied June 17, 1993.

Thomas F. Bloom, Nashville, Arvis R. Johnson, Cookeville, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, Eugene J. Honea, Asst. Atty. Gen., Nashville, John A. Moore, Livingston, for appellee.

## OPINION

DWYER, Judge.

This represents an appeal as of right by the appellant, Jimmy W. Hammock, from the judgment of the Overton County Criminal Court. The appellant was found guilty by a jury of two counts of murder in the first-degree, as defined in T.C.A. § 39-13-202. The appellant was sentenced to two life sentences, to be served consecutively, in the custody of the Tennessee Department of Corrections. Four issues are presented for appellate review, including a challenge to the sufficiency of the convicting evidence and the trial court's overruling of appellant's motion for acquittal on the basis of insanity.

The record reveals that on or about July 21, 1990 the appellant repeatedly stabbed and killed his live-in girlfriend and her seven-year-old son. No motive was established by the State. Appellant was apprehended later in the day, and the following day confessed to two investigating officers. By appellant's account, he flew into an uncontrollable rage because his girlfriend kept insisting that he see a doctor, so he got a knife from the kitchen and stabbed her and her son to death.

The proof further revealed that appellant had a history of mental problems, and had been prescribed medication (Lithium) for the disorder. It also appears from the record that the appellant had been off his medication at the time of the indictment offenses.

The appellant was referred by the trial court to the Middle Tennessee Mental Health Institute (MTMHI) for evaluation. At the time of his admission, the appellant was described as being alert, oriented, and willing to discuss his charges and history. The staff conference report indicated also that a defense of insanity could be supported in the staff's opinion.

Dr. Samuel Craddock, a clinical psychologist at MTMHI who participated in the appellant's evaluation, testified at trial that the appellant had been previously diagnosed as suffering from bipolar disorder and had a history of mental illness. Dr. Craddock opined that the appellant's condition met Tennessee standards for the insanity defense. He testified that the MTMHI evaluation was consistent with an earlier diagnosis, that the appellant had suffered from this condition for a number of years, and that his condition had psychotic features.

Dr. Craddock further testified that the social worker's report indicated that the victim had told her sister that the appellant had stopped taking his medication prior to the murders. Dr. Craddock took the appellant off medication at MTMHI so they could observe him without his being under the influence of any sort of medication. He also stated that when the appellant was on medication he was "functional."

Dr. Jackson White, staff psychiatrist at MTMHI, also offered the opinion that the appellant was legally insane at the time he committed the murders. Dr. White concurred with Dr. Craddock in his opinion that the appellant's mental illness could be put in a stage of remission through proper treatment with medication.

The State offered no medical testimony to refute that presented by the appellant, although Drs. Craddock and White were cross-examined at length. Instead, the State relied on lay testimony regarding the appellant's actions and conduct.

This Court finds it necessary to review only the question of appellant's insanity as it

relates to the sufficiency of the convicting evidence. The determination as to the manner in which the defense of insanity may be presented to a jury has been left to the States. *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Powell v. Texas,* 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968); *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952).

■ The applicable principles of law were settled long ago in this State. The presumption of sanity places the burden of showing insanity at the time of commission of a crime upon him who asserts it as a defense. *Mullendore v. State,* 183 Tenn. 53, 60, 191 S.W.2d 149 (1945); *Spurlock v. State,* 212 Tenn. 132, 134, 368 S.W.2d 299 (1963).

■ While the State is not bound to establish the defendant's sanity in the first instance, if the defendant's or the State's evidence raises a reasonable doubt as to the defendant's sanity, such evidence relieves the defendant of further proof upon that issue and shifts the burden of proof to the State. *Stuart v. State,* 60 (1 Baxt.) Tenn. 178 (1873); *King v. State,* 91 Tenn. 617, 648, 20 S.W. 169 (1892).

■ Whenever testimony is introduced countervailing the presumption of sanity and raising a question of the accused's insanity, the State must then establish his sanity to the satisfaction of the jury beyond a reasonable doubt. *Jordan v. State,* 124 Tenn. 81, 89, 135 S.W. 327 (1910); *Davis v. United States,* 165 U.S. 373, 378, 17 S.Ct. 360, 362, 41 L.Ed. 750, 754.

■ In *Graham v. State,* 547 S.W.2d 531 (Tenn.1977), an opinion authored by the late Justice Joseph Henry, the Supreme Court adopted the American Law Institute's Model Penal Code formulation of insanity:

(1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to *appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.*

(2) As used in this Article, the terms 'mental disease or defect' do not include any abnormality manifested only by repeated criminal or otherwise antisocial conduct. [emphasis added].

*Graham, supra,* at 543. To prove sanity, therefore, the State must show that the defendant could appreciate the wrongfulness of his conduct and had the capacity to conform his conduct to the requirements of the law.

Since the appellant has challenged the sufficiency of the State's evidence to convict him, a detailed review of the lay and expert testimony concerning appellant's lack of mental capacity is deemed necessary because of the reviewing standards mandated in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Under *Jackson* and Rule 13(e), Tenn.R.App.P., this Court must find sufficient evidence upon which any rational trier of fact could be convinced beyond a reasonable doubt of the appellant's sanity.

■ This Court's ruling in the case *sub judice* is predicated largely upon our Supreme Court's decision in *State v. Clayton,* 656 S.W.2d 344 (Tenn.1983), as well as the dissent penned by Judge Daughtrey on direct appeal. In *Clayton,* as here, the appellant was found to have a history of mental disorder which rose to the level of psychosis. There, as here, appellant was off his medication at the time of the indictment offense. There, as here, numerous experts testified as to appellant's mental disorder and further opined that under Tennessee law the appellant was legally insane.

There can be no dispute that the appellant presented sufficient proof to rebut the presumption of sanity. Rather than present expert testimony to contradict the unequivocal expert testimony that the appellant was insane, and a staff report to the same effect, the State simply had lay witnesses testify as to the appellant's appearance and actions.

■ We find, as a matter of law, that the appellant has overcome the presumption of sanity. The expert witnesses were all of the opinion that the appellant was unable to conform his conduct to the requirements of the law because of a mental illness. The testi-

mony of lay witnesses concerning appellant's outward appearance, simply put, is irrelevant to a correct determination of this issue under the standards set by our Supreme Court in *State v. Clayton, supra,* at 351. We further find no evidence in this record which, if believed by a jury, would form the basis for the conclusion that the appellant could conform his conduct to the dictates of the law.

Where, as here, the State bears the burden of proving the appellant sane beyond a reasonable doubt and fails to present any relevant evidence which addresses an essential element of the legal test of insanity, a conviction is repugnant to due process and must be reversed. *See State v. Clayton, supra.*

Accordingly, the judgment of the trial court is reversed and the case remanded to the Criminal Court of Overton County for further proceedings pursuant to T.C.A. § 33–7–303.

PEAY, J., concurs.

SUMMERS, J., dissents.

SUMMERS, Judge, dissenting.

I respectfully dissent from the majority opinion. I believe that my learned colleagues have missed the mark, and I would hold that the evidence is sufficient to find this appellant guilty of murdering his girlfriend and her seven-year-old son.

The state called several lay witnesses who had known the appellant for many years. Their testimony consistently and substantively indicated sanity. Vergie Ramsey said that the appellant "was putting on to get his check started...." George Ramsey, having known the appellant for four or five years, testified that the only time the appellant had any problems was "when he got drunk." Walter Pigg, an inmate at the Jackson County Jail along with the appellant, testified that he had known the appellant for about six or seven years. He said the appellant only "acted funny" in jail when the victim's sister was present. Donna Stewart, having known the appellant for ten years, related that he was mostly quiet except when he was drinking. She witnessed no bizarre behavior. Carol Stacey, appellant's cousin, knew appel-

lant all of his life. She saw nothing unusual about his behavior.

Appellant made a statement after the killings. T.B.I. Agent Moore stated that he saw nothing unusual about appellant's demeanor when he was giving the statement. Officer Roger Phillips of the Livingston Police Department testified that he had known appellant for seven or eight years, that when appellant confessed he seemed normal other than being a little bit nervous. Phillips was unaware of any mental problems that the appellant might have had.

I disagree with my colleagues regarding their interpretation of *State v. Clayton,* 656 S.W.2d 344 (Tenn.1983). I do not believe that our Supreme Court promulgated a blanket rule that changes the law regarding the insanity defense. I cannot agree with the majority's statement that the law in Tennessee is such that "[t]he testimony of lay witnesses concerning appellant's outward appearance, simply put, is irrelevant to a correct determination of this issue under the standards set out by our Supreme Court in *State v. Clayton...."* If in fact the majority is correct, and *Clayton* changed the law in Tennessee, then I would respectfully ask for this issue to be reviewed by the Supreme Court.

In the case of *Graham v. State,* 547 S.W.2d 531 (Tenn.1977), the Supreme Court, after much soul-searching, joined those states which subscribed to the ALI Model Penal Code Test to evaluate criminal responsibility. Under the test, a defendant in a criminal trial in Tennessee is presumed to be sane. This presumption may be rebutted by a *prima facia* showing of insanity. If evidence challenges the presumption of sanity, then the sanity of the accused becomes an element of the offense. *State v. Dodson,* 780 S.W.2d 778 (Tenn.Crim.App.1989). The state then must establish beyond a reasonable doubt the defendant's sanity. The state must establish his capacity to appreciate the wrongfulness of his conduct and his ability to conform his conduct to the requirements of the law. *State v. Max,* 714 S.W.2d 289 (Tenn. Crim.App.1986).

For decades Tennessee has permitted a lay witness to give an opinion about another

person's mental condition. Tennessee has permitted a lay witness to testify regarding the insanity of a defendant if a factual foundation is laid that is sufficient to justify the lay opinion. *See Edwards v. State*, 540 S.W.2d 641 (Tenn.1976).

In the case *sub judice*, a psychologist and a psychiatrist testified that the appellant met the *Graham* test at the time of the commission of the murders. Numerous lay witnesses who had known Hammock for several years or heard him confess testified for the state to the effect that appellant was sane. Police officers testified about appellant's condition when he confessed to the crimes. There is no question that the appellant shifted the burden. It appears to me, however, that the state met this burden by the introduction of lay testimony.

In the recent, unreported case of *State v. Sparks*, our Presiding Judge, Jerry Scott, wrote as follows:

> The state may establish a defendant's sanity by the use of expert testimony, by lay testimony, or by showing that the defendant's behavior prior to, during, or after the commission of the crime was consistent with sanity and inconsistent with insanity. *Edwards v. State*, 540 S.W.2d 641, 646 (Tenn.1976). The jury is not required to accept expert testimony over lay testimony or evidence of the defendant's behavior at the time of the offense. The jury can grant each bit of evidence such weight as it deserves in light of all the circumstances. *State v. Estes*, 655 S.W.2d 179, 184 (Tenn. Crim.App.1983).

*State v. Sparks*, No. 03C01–9205–CR–155, slip op. at 6, 1993 WL 54620 (Tenn.Crim. App., Knoxville, March 3, 1993) (Judge Wade and Special Judge Crawford concurring).

I believe the *Sparks* case hits the mark; this is a question for the jury. In our state, great weight is given to the result reached by the jury in a criminal trial. A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Williams*, 657 S.W.2d 405 (Tenn.1983). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832 (Tenn.1978).

Where sufficiency of the evidence is challenged, such as in the case at bar, the relevant question for this Court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Duncan*, 698 S.W.2d 63 (Tenn.1985); T.R.A.P. 13(e). The weight and credibility of the witness' testimony are matters entrusted exclusively to the jury as the triers of fact. *State v. Sheffield*, 676 S.W.2d 542 (Tenn. 1984); *Byrge v. State*, 575 S.W.2d 292 (Tenn. Crim.App.1978).

A jury is not required to accept the testimony of a psychologist or a psychiatrist on the issue of sanity to the exclusion of lay testimony. Such a rule would effectively emasculate our jury trial system on sanity issues. Our system would be replaced by a system wherein psychiatrists and psychologists determine the ultimate outcome of the lawsuit. I do not think that *Clayton*, or the Tennessee Supreme Court meant for that to happen.

In *Edwards v. State*, our Supreme Court stated:

> [I]t is settled beyond question that the weight and value of expert testimony is for the jury and must be received with caution. This applies to the expert opinions of medical men. Where there is any conflict between expert testimony and the testimony as to the facts, the jury is not bound to accept expert testimony in preference to other testimony, and must determine the weight and credibility of each in the light of all the facts shown in [the] case. Expert medical opinion regarding the functioning of the human body must always be more or less speculative.

*Edwards v. State*, 540 S.W.2d 641, 647 (Tenn. 1976) (citations omitted).

If in fact my colleagues are correct as to the law in this case, prosecutors across the state will have their hands tied in many cases where a defendant's mental condition is a

defense. A defendant, particularly one with the funds to hire an expert, may build an insanity defense for several months before the state receives any notice pursuant to Rule 12.2 of the Tennessee Rules of Criminal Procedure. By the time the state is finally aware of the issue, the state may not be able to receive an effective evaluation from its own court-appointed mental experts. Therefore, the state will have no recourse but to call on lay witnesses who may have observed the defendant throughout his or her life or observed the defendant on the day of the commission of the crime. If the majority in the present case is correct, the state, by law, would be unable to meet its burden with lay testimony. This would be unfair, unjust, and a radical change in our law.

In my view, the issue of insanity is another element of the offense charged if the defendant shifts the burden. The state must then prove beyond a reasonable doubt and to a moral certainty that the appellant was sane. As to every other element of the offense, the state may use lay testimony. I do not see why we have to relegate ourselves in Tennessee to a "battle of the experts," as the majority would have us do. After all, there was a time when we were prosecuting and defending criminal cases and there were no psychiatrists, psychologists, or mental health experts. The only evidence available was lay testimony.

For these and other reasons of common sense, I respectfully submit that my two colleagues have misinterpreted the law in Tennessee. However, if they have hit the mark and I am wrong, I respectfully ask our high court to reexamine *Clayton* in the interests of fairness for the public and the accused.

## ORDER ON PETITION TO REHEAR

The State has filed a respectful and timely petition for rehearing in this matter. Specifically, the State is aggrieved with the Court's opinion that lay witness testimony with respect to appellant's outward appearance, after the fact, was irrelevant to a determination of whether a defendant's mental illness was such as to render him substantially incapable of conforming his conduct to the requirements of the law he is charged with violating. Further, the State inquires whether the Court's holding as to the above determination represents a "per se rule."

As stated in the majority opinion, our Supreme Court's ruling in *State v. Clayton*, 656 S.W.2d 344 (Tenn.1983) is directly on point and controlling. Without reiterating the factual parallels in the two cases, both involve undisputed expert testimony that the respective defendants suffered from mental illnesses which rendered them unable to conform their conduct to the requirements of the law.

The Supreme Court in *Clayton* relied heavily upon the minority opinion of this Court, penned by then Judge Martha Craig Daughtrey, in determining that under the facts of that case the testimony of the police officers concerning Clayton's outward appearance, after the fact, was irrelevant to a correct determination as to his sanity. *Id.,* at 351. The pertinent inquiry was whether, at the time of the offense, the defendant was able to conform his conduct to the requirements of the law. *Id.,* at 351. Here, as in *Clayton,* the testimony of arresting officers the following day concerning Hammock's outward appearance, under the circumstances, was irrelevant to a determination whether he suffered from a psychosis and could appropriately conform his conduct.

As the State further noted, here the appellant was the beneficiary of unobjected-to and uncontroverted testimony by two court-appointed experts who opined that appellant indeed suffered from such a mental illness, could not conform his conduct, and was legally insane. While we are directed by the State to our unpublished opinion in *State v. Travis Wayne Sacchinelli,* 1989 WL 76329 released July 14, 1989 at Nashville, a cursory review of that authority reveals the burden is upon the State to prove that at the time of the crime the appellant had the capacity to commit the crime under the standards set forth in *Graham v. State,* 547 S.W.2d 531 (Tenn.1977). In the case *sub judice,* however, the State totally failed to do so. Furthermore, we distinguish *Sacchinelli* in that there the issue of insanity was contested by expert and lay witnesses offered by both sides, thereby creating a classic controversy

of fact. Accordingly, we see no reason for granting the instant petition on the basis of that authority.

In conclusion, once a defendant has overcome the presumption of sanity, as here, the State must meet evidence with evidence, which it has not done.

For the foregoing reasons, and inasmuch as the Court has not overlooked a material fact or failed to consider applicable authority, the petition is denied.

ENTER this 17 day of June, 1993.

/s/ Robert K. Dwyer, Judge
ROBERT K. DWYER, JUDGE
/s/ John H. Peay, Judge
JOHN H. PEAY, JUDGE
/s/ Paul G. Summers
PAUL G. SUMMERS, JUDGE

SUMMERS, Judge, dissenting.

The state has filed a timely and respectful petition for rehearing in this matter. My colleagues have denied the petition. I dissent from this denial, and I feel that the state has presented a meritorious case for a rehearing pursuant to T.R.A.P. 39.

As I expressed in my dissenting opinion, I simply do not believe that the law in Tennessee requires a jury to accept the testimony of an expert on the sanity issue to the exclusion of lay testimony or to the exclusion of evidence of the actions of the appellant which are consistent with his or her sanity. The weight as well as the value of expert testimony should be for the jury to decide. If this case is not revisited, prosecutors in Tennessee will have their hands tied in cases where a defendant's mental condition is a defense. I view the issue of insanity as another element of the offense charged if the defendant shifts the burden. After that, the state must prove beyond a reasonable doubt that the defendant was sane. I feel that as in every other element of an offense, the state should be able to use lay testimony.

For these and the other reasons that are articulated in my dissenting opinion in this case, I would grant the petition to rehear.