**STATE of Tennessee, Appellee,**

v.

**Dwayne Willard PHILLIPS, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Sept. 25, 1996.

Permission to Appeal Denied by Supreme Court March 2, 1998.

William C. Taiman, Knowxville, for Appellant.

Charles W. Burson, Attorney General, and Merrilyn Feirman, Assistant Attorney General, Nashville, Randall Nichols, District Attorney General, and Fred Bright, Assistant District Attorney General, Knoxville, for Appellee.

## *OPINION*

TIPTON, Judge.

The defendant, Dwayne Willard Phillips, appeals as of right from the order of the Knox County Criminal Court requiring his hospitalization for a minimum of sixty days in a mental health facility pursuant to T.C.A. § 33–7–303(a) for the purpose of diagnosis and evaluation after he was found not guilty by reason of insanity. The defendant contends that his mandatory hospitalization pursuant to T.C.A. § 33–7–303(a) violates equal protection and due process. We disagree.

The defendant was charged with aggravated robbery, three counts of aggravated kidnapping, and two counts of especially aggravated kidnapping. He entered a plea of not guilty by reason of insanity. At his bench trial, the defendant stipulated the facts giving rise to the charges. On December 5, 1990, the defendant entered a branch of the First Tennessee Bank and forced several tellers at gunpoint to give him money. He then forced the branch manager to accompany him to a car and demanded that she get in. However, when a dye pack among the stolen money exploded, the manager was able to escape. Later, the defendant was arrested after leading the police on a chase, wrecking his car and attempting to escape on foot. Approximately twelve thousand dollars in cash was retrieved.

The remaining proof consisted of the testimony of Dr. Clifton R. Tennison, a psychiatrist, and Robert Wyrick, a licensed clinical social worker. Dr. Tennison testified that as the medical director at Helen Ross McNabb Center, he conducted a court-ordered examination of the defendant on October 31, 1991, and that another Center psychiatrist conducted an examination on November 8, 1991. He said that several "forensic team conferences" were held regarding the defendant

and that they concluded that a defense of insanity could be supported. Dr. Tennison stated that in his opinion within a reasonable degree of medical certainty, the defendant was suffering from major depression with psychotic features at the time of the crime, characterized by grandiose and paranoid delusions. Essentially, he believed that the defendant could appreciate that his conduct was wrong at the time it occurred, but was substantially deprived of the ability to conform his conduct to the requirements of the law.

Dr. Tennison testified that he had reviewed Mr. Wyrick's records of the defendant's treatment and stated that he believed that the defendant had made remarkable progress during psychotherapy. Dr. Tennison stated that the defendant was not a danger to society, but needed to continue in therapy. He indicated that he believed that mandatory hospitalization would be counterproductive to the defendant's mental health status, asserting that the outpatient psychotherapy had been directly responsible for the defendant's return to functioning in society. However, when asked whether the defendant's depression was recurrent or not, Dr. Tennison admitted that he did not make that determination and indicated that it would entail "a lot more evaluation to find out his remote psychiatric history." He noted that the defendant had been in therapy with Mr. Wyrick at least once before the incident.

Mr. Wyrick testified that he was employed with Ridgeview Hospital for some twenty-eight years as a psychotherapist. He stated that about a month after the incident, the defendant began therapy with him and that the defendant remained in treatment through the time of the trial, being seen weekly. He said that he believed that the defendant was not a danger to society and that hospitalization would pose added stress, being counterproductive although not "disastrous." He acknowledged, though, that continued treatment was necessary indefinitely, although a point will arrive at which maximum gain will have been reached.

The trial court found the defendant to be not guilty by reason of insanity. It concluded that the requirement under T.C.A. § 33–7–303(a) of immediate hospitalization of a person acquitted of a crime by reason of insanity was constitutional. However, it found that the defendant was no longer a danger to society at the time of the trial and that immediate hospitalization could result in irreparable harm to the defendant in light of his progress since the time of the incident. Thus, it stayed the defendant's hospitalization pending the disposition of this appeal, conditioned upon the defendant remaining in psychotherapy and maintaining his employment.

## I

Preliminarily, we note that the defendant has candidly acknowledged a question about our jurisdiction in this case, a threshold determination that we are obligated to make in every case. *See* T.R.A.P. 13(b). The state has not raised a similar question in this court.

■ First, a question existed at the time of the appeal about whether the Tennessee Court of Criminal Appeals could take jurisdiction in a case in which the only issue was the constitutionality of a state statute. At that time, T.C.A. § 16–5–108(c) (Supp.1993), expressly barred our assumption of jurisdiction in such a case. However, early in this appeal, the legislature deleted subsection (c) from T.C.A. § 16–5–108 so as to give us authority to decide this case. *See* 1994 Tenn.Public Acts, ch. 609, § 1.

■ Second, a question may exist about whether the trial court's ordering the defendant to be hospitalized, as mandated by T.C.A. § 33–7–303(a), falls within our jurisdiction. Obviously, the order follows an acquittal and is not a "final judgment" in a criminal case. However, it necessarily occurs within a case or proceeding "instituted with reference to or arising out of a criminal case" for which we are specifically invested with review authority. T.C.A. § 16–5–108(a)(2).

Also, we note that after the statutory period of evaluation, an insanity acquittee is entitled to a hearing in the original trial court to determine if commitment or further treatment is warranted and that appellate review

of that determination is by our court. *See* T.C.A. § 33–7–303(b)(1) and (d). Given these circumstances, it is only practical to assume that we have jurisdiction, as well, to review the trial court's initial hospitalization order.

■ We must note, though, that the fact that we have authority over this case and the constitutional issue raised does not necessarily mean that the defendant has properly appealed the case. The record reflects that the defendant filed a notice of appeal and has otherwise conducted this case as an appeal as of right pursuant to Rule 3(b), T.R.A.P. However, nothing in Rule 3(b) provides for an appeal as of right from a post-acquittal order in a criminal case. In this respect, we recognize that in *State v. McCary*, 815 S.W.2d 220 (Tenn.Crim.App.1991), this court accepted an appeal as of right from a trial court's refusal to expunge public records of dismissed charges even though the appeal was not expressly authorized by Rule 3(b). In doing so, it viewed the omission of such an action from the appellate rules to be an oversight because "the statute establishing jurisdiction in this Court apparently anticipates that all final judgments arising out of criminal cases are appealable." 815 S.W.2d at 221.

We are not so confident, though, that *McCary*'s result should control in the present case. The initial hospitalization order is essentially in the nature of an interlocutory order in that the matter is required by statute to be returned to the trial court to determine whether, at least, future outpatient treatment is warranted. *See* T.C.A. § 33–7–303(b)(1). In fact, with the initial order being one imposed solely by statutory mandate, leaving nothing to the discretion of the trial court until the matter is returned to the court, we do not view the initial order to be a final judgment order that would allow an appeal as of right. In this respect, the provision in T.C.A. § 33–7–303(d) for an appeal to this court of a "final adjudication" can only be a reference, in context, to the trial court's ultimate discretionary action. Therefore, we

conclude that appellate review of a trial court's initial hospitalization order for an insanity acquittee under T.C.A. § 33–7–303(a) should have been invoked through a discretionary appeal pursuant to either Rule 9 or Rule 10, T.R.A.P.[1] However, given the lack of objection by the state and the fact that we believe we have jurisdiction to act in this case, we believe that good cause exists for us to suspend the appellate rules in order that the case may be resolved upon its merits. *See* T.R.A.P. 2.

## II

The defendant contends that T.C.A. § 33–7–303(a) violates his due process and equal protection rights because it does not allow the trial court to exercise any discretion as to whether an insanity acquittee must undergo the sixty to ninety day hospitalization for diagnosis and evaluation. The defendant argues that he has proven that he was neither mentally ill nor dangerous at the time of acquittal. He maintains that the legislature enacted the mandatory hospitalization provision in order to prevent potentially dangerous insanity acquittees from being released without first undergoing some type of mental evaluation. He contends that he is different from most insanity acquittees because he voluntarily began psychiatric treatment at the time of the commission of the offense, as opposed merely to undergoing a mental evaluation for trial purposes. The defendant asserts that it would violate his due process and equal protection rights if the state held him for evaluation when he has demonstrated his present sanity and lack of dangerousness.

In order to put the defendant's arguments into context, we should explain how Tennessee dealt with the issue of insanity at the time of the defendant's trial. Although the law presumes the sanity of one accused of a crime, *State v. Overbay*, 874 S.W.2d 645, 650 (Tenn.Crim.App.1993), insanity at the time of the offense was "a defense to prosecution if, ... as a result of mental disease or defect,

---

1. In this case, the defendant sought and the trial court granted a Rule 9 interlocutory appeal on the same issue before the verdict was returned. However, this court rejected the appeal at that time because the issue was wholly contingent

upon an acquittal, and in any event, the state acknowledged that upon an acquittal, a stay could be obtained for purposes of an appeal after the verdict.

the person lacked the substantial capacity either to appreciate the wrongfulness of the person's conduct or to conform that conduct to the requirements of the law." T.C.A. § 39–11–501(a) [amended 1995].[2] Although sanity was presumed, if the evidence presented by either the defendant or the state raised a reasonable doubt as to the defendant's sanity, the state had the burden of proving the defendant's sanity beyond a reasonable doubt. *See Collins v. State,* 506 S.W.2d 179, 183–84 (Tenn.Crim.App.1973); *Graham v. State,* 547 S.W.2d 531, 544 (Tenn.1977). In this fashion, a verdict of not guilty by reason of insanity means that, at least, some evidence of insanity existed and a reasonable doubt was found to exist with regard to sanity at the time of the alleged offense.

In *Graham,* 547 S.W.2d at 544, our supreme court recommended that the legislature correct "a deficiency in Tennessee law relating to the disposition of a criminal defendant found not guilty by reason of insanity." Under T.C.A. § 33–709, the district attorney had the option of seeking hospital-ization of an insanity acquittee if he determined that it was justified. The supreme court stated that the trial court should have the authority to commit an insanity acquittee, instead of leaving such a decision to the district attorney's discretion. *Graham,* 547 S.W.2d at 544. The legislature subsequently amended the statute, 1977 Tenn.Pub.Acts, ch. 396, and imposed the requirement that all insanity acquittees be detained for sixty to ninety days for diagnosis and evaluation. The supreme court stated that the "new legislation should significantly reduce the risk that persons acquitted by reason of insanity will be prematurely released, or released without mandatory out-patient treatment." *State v. Clayton,* 656 S.W.2d 344, 353 (Tenn.1983).

Under T.C.A. § 33–7–303(a), the trial court is required to order an insanity acquittee to be detained for diagnosis and evaluation for a minimum of sixty days and a maximum of ninety days in a hospital or treatment facility.[3] After the diagnosis and evaluation peri-

---

2. For offenses occurring on or after July 1, 1995, T.C.A. § 39–11–501(a) provides that insanity is an affirmative defense which the defendant has the burden of proving by "clear and convincing evidence." 1995 Tenn.Pub.Acts, ch. 494.

3. The present statute is, in pertinent part, as follows:

**37–7–303. Judicial hospitalization or outpatient treatment of person judged not guilty by reason of insanity—Transfer to forensic services unit.**—(a) When a person charged with a criminal offense is acquitted of the charge on a verdict of not guilty by reason of insanity at the time of the commission of the offense, the criminal court shall order the person detained for diagnosis and evaluation for a minimum of sixty (60) days and a maximum of ninety (90) days in a hospital or treatment resource.

(b)(1) Following the diagnosis and evaluation, if certification is provided that the person is committable under § 33–6–104, the district attorney general shall file a complaint in the criminal court for judicial commitment under § 33–6–104 and for an order requiring the person to participate in outpatient treatment at a treatment resource under this subsection. If certification is not provided that the person is committable under § 33–6–104, the district attorney general shall file a complaint in the criminal court for an order requiring the person to participate in outpatient treatment at a mental health facility under this subsection.

(2) Notwithstanding any provision to the contrary in this title, the hospital or treatment resource shall not release the person without specific authorization of the court while such complaint is pending until the end of the ninety (90) day maximum detention ordered under subsection (a). The hospital or treatment resource shall release the person at the expiration of the ninety (90) day detention order unless the person has been ordered committed under § 33–6–104.

(3) If the court does not commit the person under § 33–6–104 and the court determines that the person's condition resulting from mental illness is likely to deteriorate rapidly to the point that the patient will pose a substantial likelihood of serious harm as defined in § 33–6–104(a) unless treatment is continued, the court may order the person to participate in outpatient treatment at a treatment resource or with a private practitioner. Otherwise, the court may not order the person to participate in outpatient treatment. The obligation to participate in outpatient treatment continues until it is terminated by the court under subdivision (5).

(4) If the court orders the patient to participate in outpatient treatment and the person does not comply with the treatment plan, the treating professional shall notify the district attorney general of the noncompliance, and the district attorney general may move the criminal court to cite the person for civil or criminal contempt of court for the non-compliance and may file a complaint in the criminal court under the provisions of § 33–6–104. The treating professional shall file a report with the district attorney general every

od, if certification is made that the acquittee is committable under the civil involuntary care and treatment standards provided in T.C.A. § 33–6–104, the district attorney general must file a complaint in criminal court seeking both judicial commitment and an order requiring outpatient treatment. T.C.A. § 33–7–303(b)(1). If there is no certification that the acquittee is committable, the district attorney general must file a complaint seeking only outpatient treatment at a mental health facility. T.C.A. § 33–7–303(b)(1).

## A

### DUE PROCESS

■ We recognize that involuntary commitment to a mental institution constitutes a deprivation of liberty that invokes the constitutional protection of procedural due process. *Jones v. United States,* 463 U.S. 354, 361, 103 S.Ct. 3043, 3048, 77 L.Ed.2d 694 (1983); *Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979). Thus, although a state may rely upon its police powers to confine the dangerously mentally ill, it must insure that their constitutional rights are safeguarded. *See Jackson v. Indiana,* 406 U.S. 715, 736, 92 S.Ct. 1845, 1857, 32 L.Ed.2d 435 (1972).

In the context of a criminal defendant who attempts to assert mental illness as a defense, special interests have been recognized to be of concern. First, we note that the United States Supreme Court has refused to articulate an insanity defense in constitutional terms and has chosen instead to leave its significance to the individual states. *Powell v. Texas,* 392 U.S. 514, 535–36, 88 S.Ct. 2145, 2156, 20 L.Ed.2d 1254 (1968); *see also State v. Hammock,* 867 S.W.2d 8, 10 (Tenn.Crim. App.1993) (The manner in which the insanity defense is presented to the jury is left for the state's determination.) Also, the Supreme Court has previously refused to hold that due process requires the adoption of any given insanity test or allocation of a particular burden of proof. *See Leland v. Oregon,* 343 U.S. 790, 799–801, 72 S.Ct. 1002, 1007–08, 96 L.Ed. 1302 (1952).

As a result, numerous means have been used both to protect the public from potentially dangerous defendants acquitted by reason of insanity and to insure that the acquittee is provided with due process and the equal protection of law. Several states make commitment mandatory after acquittal by reason of insanity. *See Lynch v. Overholser,* 369 U.S. 705, 708–09 n. 4, 82 S.Ct. 1063, 1066 n. 4, 8 L.Ed.2d 211 (1962). In this respect, three states, Colorado, Kansas, and Michigan, have had provisions similar to that existing in Tennessee at the time of the defendant's conviction relative to the state having the burden of proving sanity beyond a reasonable doubt and the mandatory hospitalization upon acquittal. In *Ingles v. People,* 92 Colo. 518, 22 P.2d 1109, 1111 (1933), the Colorado Supreme Court stated that when a defendant properly raises the insanity defense, the burden is on the prosecution to prove beyond a reasonable doubt that the defendant was sane at the time of the commission of the crime. *See also State v. Linn,* 251 Kan. 797, 840 P.2d 1133, 1141 (1992); *In re Certified Question,* 425 Mich. 457, 390 N.W.2d 620 (1986). Later, in response to due process and equal protection challenges, the Colorado Supreme Court upheld the provision of the insanity statute that required the trial court to commit an insanity acquittee automatically without a precommitment hearing in order to determine the acquittee's

---

six (6) months as to the person's continuing need for treatment.

(5) The court shall terminate the obligation to participate in outpatient treatment when it determines that the person is no longer subject to such an obligation under subdivision (3).

(6) The court is hereby vested with jurisdiction to conduct proceedings authorized by this subsection.

(c)(1) Following the hearing conducted by the criminal court under § 33–6–104, if the court finds that the person meets the commitment standards under § 33–6–104, the court shall en-

ter an order of judicial hospitalization and transfer the individual to the custody of the commissioner subject to departmental regulations governing release procedures.

(2) If the court further finds:

(A) That the person is substantially likely to injure such person or others if he is not treated in a forensic services unit; and

(B) That treatment in such a unit is in his best interests, the person shall be transferred into the custody of the commissioner at a forensic services unit designated by the commissioner subject to the provisions of § 33–7–203.

mental condition and need for treatment at the time of the commitment. The court stated that where the defendant has been adjudicated not guilty by reason of insanity for acts

> which, but for his insanity, would be punishable as crimes, that adjudication furnishes a legitimate basis for the immediate commitment of the defendant to an institution for observation and examination, as well as any needed treatment, so that a reliable determination might be made of his mental condition and what danger, if any, he poses to himself and others.

*People v. Chavez,* 629 P.2d 1040, 1043, 1048 (Colo.1981). *See also In re Jones,* 228 Kan. 90, 612 P.2d 1211, 1228 (1980); *People v. McQuillan,* 392 Mich. 511, 221 N.W.2d 569, 576 (1974).

The *Chavez* court considered several factors, including the state's interest in committing those mentally ill persons who have committed dangerous acts and the fact that it is reasonable to infer from an insanity acquittal that the defendant suffered from a mental disease at the time he committed the crime. Also, it stated that it was not "unfair ... to believe that the disorder likely is a continuing one since mental illness for the most part is a long lasting phenomenon." *Chavez,* 629 P.2d at 1048. The court noted that an insanity adjudication represented a determination that the prosecution failed to prove sanity beyond a reasonable doubt but concluded that "[e]ven under this interpretation, it has been held that a judicially determined doubt as to an accused's sanity provides a sufficient warrant for immediate commitment and further examination as to his present mental condition. *E.g., Bolton v. Harris,* 395 F.2d 642, 651 (D.C.Cir.1968); *Ragsdale v. Overholser,* 281 F.2d 943 (D.C.Cir.1960); *State v. Alto,* 589 P.2d 402 (Alaska 1979); *People v. McQuillan,* 392 Mich. 511, 221 N.W.2d 569 (1974)." *Id.* at 1047.

Also, the *Chavez* court recognized the acquittee's substantial liberty interest in avoiding involuntary commitment to a mental hospital, but it concluded that due process did not require that a hearing precede the insanity commitment. The primary purpose of such a commitment is to allow the state to assess the acquittee's mental status and a

precommitment hearing " 'would be meaningless until trained medical experts had a reasonable opportunity to observe and examine the subject and report their finding. [Thus,] some time gap between the verdict and the appraisal of the defendant's then existing mental condition is unavoidable under any scheme which would provide adequate safeguards.' " *Id.* at 1048–49 (quoting *Ragsdale v. Overholser,* 281 F.2d at 948). The court determined that due process is satisfied by procedures for release that insure against the risk of continued detention without cause, and significantly for our purposes, the court concluded that the statutory requirement of a release hearing occurring after 180 days of initial confinement did not violate due process.

We agree with the reasoning in *Chavez* regarding due process considerations of a mandatory hospitalization statute for an insanity acquittee. Automatic commitment of an insanity acquittee provides the state with an in-depth opportunity to assess the defendant's current mental status and to determine whether he poses a potential danger upon his release. We agree that the fact that the trial court found a reasonable doubt as to the defendant's sanity at the time of the offense provides sufficient reason for further examination. Moreover, the sixty-to-ninety-day period between the defendant's acquittal and the hearing to appraise his then existing mental condition is necessary to provide the medical experts with a reasonable opportunity to observe him. Without an evaluation, a trial court would be forced prematurely to evaluate the potential danger an insanity acquittee poses to himself or others. *See People v. De Anda,* 114 Cal.App.3d 480, 170 Cal.Rptr. 830, 834 (1980), *cert. denied,* 451 U.S. 990, 101 S.Ct. 2329, 68 L.Ed.2d 849 (1981).

The defendant contends that the United States Supreme Court has held that a state may not detain an acquittee who has recovered his sanity and is no longer dangerous without affording him due process. In *Foucha v. Louisiana,* 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992), the defendant was found not guilty by reason of insanity and automatically committed under Louisiana

law, which also required the defendant to remain institutionalized until he proved that he was no longer dangerous. The Court concluded that the law was unconstitutional because it allowed the indefinite, continued confinement of an acquittee without a civil commitment proceeding and without any determination of current mental illness. *See id.* at 77–86, 112 S.Ct. at 1784–89.

We do not view the defendant's disposition to be controlled by *Foucha.* As Justice O'Connor, the fifth vote for the majority, pointed out in her concurring opinion, the Court was not addressing more narrowly drawn laws that only provide for the detention of insanity acquittees. In fact, she suggested that it might "be permissible for Louisiana to confine an insanity acquittee who has regained sanity if ... the nature and duration of detention were tailored to reflect pressing public safety concerns related to the acquittee's continuing dangerousness." *Id.* at 88–89, 112 S.Ct. at 1789.

■ Furthermore, as previously noted, we believe the state has a strong interest in automatic commitment and "in avoiding the need to conduct a *de novo* commitment hearing following every insanity acquittal.... Instead of focusing on the critical question of whether the acquittee has recovered, the new proceeding likely would have to relitigate much of the criminal trial." *Jones v. United States,* 463 U.S. 354, 366, 103 S.Ct. 3043, 3050, 77 L.Ed.2d 694 (1983).[4] Obviously, the fact that the defendant acknowledged that violent acts were committed indicates dangerousness. In this respect, we agree with the jurisdictions that have concluded that the legislature can reasonably enact a mandatory hospitalization provision in order to assure the public that insanity acquittees will not be released until their recovery from past mental illness is definitely established. *See Lynch,* 369 U.S. at 716, 82 S.Ct. at 1070; *Bolton,* 395 F.2d at 649; *In re Franklin,* 7 Cal.3d 126, 101 Cal.Rptr. 553, 496 P.2d 465, 470 (1972); *Chavez,* 629 P.2d at 1048; *In re Jones,* 612 P.2d at 1224; *Harris v. Oklahoma*

*County Dist. Court,* 750 P.2d 1129, 1131 (Okla.Crim.App.1988).

■ The United States Supreme Court has recognized that in light of the "uncertainty of diagnosis in [the mental health] field and the tentativeness of professional judgment," the "courts should pay particular deference to reasonable legislative judgments." *Jones,* 463 U.S. at 364 n. 13, 103 S.Ct. at 3050 n. 13. The Tennessee legislature has provided mentally ill defendants with the right to an absolute insanity defense and, thus, has the prerogative to impose conditions on those who successfully rely upon such a defense. We do not think that the legislature acted unreasonably in allowing a definite period of sixty to ninety days for examination and diagnosis. "Due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson,* 406 U.S. at 738, 92 S.Ct. at 1858. The legislature undoubtedly considered the uncertainties of psychiatric evaluation in establishing this time period and we cannot say that it is unreasonable in length. *Cf. Chavez,* 629 P.2d at 1049–50 (six-month initial commitment does not violate due process); *McQuillan,* 221 N.W.2d at 576 (sixty-day automatic detention is reasonable).

## B

### EQUAL PROTECTION

■ The defendant also contends that he would be deprived of his right to equal protection if he were forced to undergo an evaluation in a mental hospital without any showing of need for the commitment. He maintains that he has shown through expert testimony that he was neither mentally ill nor dangerous at the time of his conviction. Although the defendant does not specifically claim that he is entitled to the same protection as one who is civilly committed, he argues that he has the right to a hearing in which the trial court would have the discretion to determine whether or not he should be subject to the sixty to ninety-day evalua-

---

4. In the present case, the trial court allowed the defendant to present proof regarding the defendant's mental condition at the time of the hear-

ing. However, such evidence was wholly irrelevant to the issue of the defendant's guilt at the time of the commission of the offense.

tion, which essentially would be the equivalent of a civil commitment hearing. In other words, the defendant argues that equal protection prevents his commitment without the equivalent determination made for civil commitments. We disagree.

"Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made." *Baxstrom v. Herold*, 383 U.S. 107, 113, 86 S.Ct. 760, 763, 15 L.Ed.2d 620 (1966). In the absence of a suspect classification, such as, race, or of an intrusion upon a fundamental constitutional right,[5] the challenged classification must "bear some rational relationship to legitimate state purposes." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 40, 93 S.Ct. 1278, 1300, 36 L.Ed.2d 16 (1973). No suspect classification is involved in this case. Also, the mandatory commitment requirement does not implicate a fundamental right because, while commitment constitutes a significant deprivation of liberty, "a person found not guilty by reason of insanity enjoys no fundamental right to unrestricted liberty upon that adjudication." *Chavez*, 629 P.2d at 1052.

Significantly, the defendant in the present case admitted that he committed the acts that would otherwise constitute criminal offenses, but that he did so while mentally ill. In this respect, the defendant placed himself in a different position than other criminal defendants or civil commitment defendants by choosing to claim that he was not mentally responsible for his acts. Moreover, we also conclude that the record on appeal does not support the trial court's "findings" that the defendant was no longer a danger to society at the time of trial and that his hospitalization would result in irreparable harm to him. It is apparent that the extent of the defendant's potential health problems was not actually known by Dr. Tennison, who acknowledged "a lot more evaluation" could occur. Also, Mr. Wyrick stated that continued treatment was needed "indefinitely," and he admitted that hospitalization would not be "disastrous," although he viewed it to be counterproductive.

Thus, we cannot say, even as a matter of evidentiary fact, that the defendant was shown to be in no need of evaluation and treatment relative to his mental health. In other words, although he may avoid the ordinary criminal penalty by successfully relying on the defense of insanity, it is not unreasonable for the legislature to provide for a means by which the state can determine that he no longer suffers from the same mental abnormality that caused the "criminal" acts. In this fashion, the commitment of an insanity acquittee bears a rational relationship to legitimate state purposes so as to comply with equal protection of the law.

Finally, we note that we are not dealing with the situation in which the state requested that the defendant be institutionalized for extensive evaluation shortly before trial and we need not speak to that situation. The defendant was examined once by a psychiatrist at the trial court's direction and this examination did not take place for approximately ten months after the commission of the crime. Although the defendant did enter therapy following the crime, it consisted of weekly sessions with a clinical social worker on an outpatient basis. We conclude that this type of diagnosis and evaluation is not what the legislature intended and the trial court should not be forced to evaluate the defendant's condition without the benefit of the intense evaluation, supervised by mental health professionals as provided for by the legislature.

For these reasons, we conclude that T.C.A. § 33–7–303(a) is constitutionally applied in this case. Therefore, the judgment of the trial court is affirmed.

WADE, Judge, concurs.

PEAY, J., not participating.

---

5. We agree with the Colorado Supreme Court's reasoning in *Chavez* that it would be inconsistent to hold that an insanity acquittee may be automatically committed to a mental hospital for due process purposes, but hold that the acquittee enjoys a fundamental right to be free from commitment for the purposes of equal protection. 629 P.2d at 1051.