

**NUMBER 13-09-00341-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**JUAN EFRAIN FLORES ROBLES,**                                   **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                          **Appellee.**

---

**On appeal from the 332nd District Court
of Hidalgo County, Texas.**

---

**MEMORANDUM OPINION**

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Chief Justice Valdez**

A jury found appellant, Juan Efrain Flores Robles, guilty of murder, and his punishment was assessed at imprisonment for a term of 31 years and a fine in the amount of $10,000. *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2003). Appellant now challenges his conviction based on the legal and factual insufficiency of the

evidence and ineffective assistance of counsel.  For the reasons set forth below, we affirm.

## I. BACKGROUND

In the early morning hours of March 9, 2008, appellant and three companions were sitting in a vehicle parked outside a bar in McAllen, Texas, when they attracted the attention of two bar patrons exiting the establishment.  Appellant, who was driving the vehicle, initiated a verbal exchange with the patrons, brothers Jorge and Jaime Cano.  As the Cano brothers walked away, appellant put his vehicle in reverse and drove backwards to follow them and continue the exchange.  Appellant and Rafael Rodriguez, a passenger sitting in the backseat behind appellant, were both armed with handguns and holding the weapons in their laps as the verbal confrontation escalated.  A physical altercation quickly erupted between the two groups of men.  During the struggle, appellant was punched in the face.  Immediately thereafter, appellant's weapon and the weapon carried by Rafael Rodriguez were discharged from within the vehicle, which then sped away from the parking lot.  Jorge Cano was struck by two bullets and died shortly thereafter.  Jaime Cano was struck by one bullet and survived with minor injuries.

Several days later, after receiving a Crime Stoppers tip, the McAllen Police Department obtained arrest warrants for appellant and Rafael Rodriguez and search warrants for a house and an apartment used by appellant and others.  Inside the house, police found two full boxes of 9mm ammunition.  One live round was found outside the house next to the driveway.  In the apartment, police found three handguns and a rifle.  Examination of the recovered firearms in conjunction with fragments of a single bullet

2

recovered from Jorge Cano during his autopsy eliminated all but one of the firearms as the weapon that could have fired the fatal shot. Based on the particular lands and grooves on the bullet, the State's expert witness testified that the shot could have been fired only from a Hi-Point 9mm handgun, such as the one police found while executing the search warrant at the apartment. The expert was not able to make a conclusive determination that the gun found by police was in fact the gun used to kill Jorge Cano; however, the gun could not be ruled out as the murder weapon.

## II. SUFFICIENCY OF THE EVIDENCE

In issues one and two, appellant challenges the legal and factual sufficiency of the evidence to support his conviction for murder.

### A. Standard of Review and Applicable Law

In 2010, the Texas Court of Criminal Appeals issued the *Brooks* decision, which abolished the distinction between challenges to the legal and factual sufficiency of the evidence. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). The decision states that "the *Jackson v. Virginia* legal sufficiency standard is the only standard a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt." *Id.* In light of *Brooks*, this Court will conduct only a legal sufficiency review.

When conducting this sufficiency review, the appellate court must ask itself "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" and not whether *it* believes the evidence establishes the verdict

3

beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). "[T]he jury is the sole judge of a witness's credibility[] and the weight to be given the testimony." *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). The reviewing court should not act as a thirteenth juror that substitutes its own opinion of the credibility and weight of the evidence for that of the fact finder's. *See Brooks*, 323 S.W.3d at 905. Instead, the reviewing court must "resolve inconsistencies in testimony in favor of the verdict" and then ask whether a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

We measure the legal sufficiency of the evidence based on the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* A person commits murder if he "intentionally or knowingly causes the death of an individual . . . ." TEX. PENAL CODE ANN. § 19.02(b)(1).

It is not necessary that the evidence directly proves the defendant's guilt; "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *see Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). "Circumstantial evidence alone may [also] be used to prove that a person is a party to an offense." *Powell v. State*, 194 S.W.3d 503, 506

4

(Tex. Crim. App. 2006) (citations omitted); *Escobar v. State*, 28 S.W.3d 767, 774 (Tex. App.—Corpus Christi 2000, pet. ref'd). A fact finder may support its verdict with reasonable inferences drawn from the evidence, and it is up to the fact finder to decide which inference is most reasonable. *Laster v. State*, 275 S.W.3d 512, 523 (Tex. Crim. App. 2009).

## B. Discussion

Appellant argues that there was no evidence to prove that he fired the fatal shot that killed Jorge Cano. Appellant also argues that there was no evidence that he acted with a conscious desire to cause Jorge Cano's death or that his conduct was reasonably certain to cause his death. According to appellant, while the evidence showed that his gun was fired during the scuffle with Jorge Cano, this "does not necessarily support or prove the requisite intentional element to satisfy the homicide statute." The mere intent to pull the trigger of the handgun, appellant argues, "does not establish a conscious objective or desire that death should result as is required for a conviction of murder." *Id.* (citing *Morrow v. State*, 753 S.W.2d 372 (Tex. Crim. App. 1988); *Kinnamon v. State*, 791 S.W.2d 84 (Tex. Crim. App. 1990)).

Appellant is correct in asserting that intentional murder under penal code section 19.02(b)(1) is a "result of conduct" offense; "that is to say, not only must an accused be found to have intended to engage in the act that caused the death, he must also have specifically intended that death result from that conduct." *Morrow*, 753 S.W.2d at 376 n.3. Furthermore, as appellant argues, evidence that appellant "intentionally pulled the trigger of a firearm . . . does not facially establish a conscious objective or desire that death should result." *Id.* Nevertheless, based on our review of the record, the

5

evidence was sufficient to prove that appellant intentionally caused the death of Jorge Cano.

We begin with the uncontroverted evidence, including appellant's statement to police that placed appellant in the driver's seat of his vehicle in the parking lot at the time of the shooting. Although appellant did not admit to having a role in the shooting, he told police that he was there when it happened and that he was punched in the face by one of the Cano brothers.

Other uncontroverted evidence established that appellant was displaying a black handgun during the fatal encounter with the Cano brothers. Jaime Cano testified to seeing appellant sitting in the driver's seat of the vehicle and holding a black handgun. Upon seeing the gun, Jaime Cano hit appellant in the face, causing appellant to bleed from his nose. Afterward, Jorge Cano pushed Jaime Cano toward the rear door of appellant's vehicle. At that time, Jaime Cano observed Rafael Rodriguez with a chrome-colored handgun and made an unsuccessful attempt to take the gun away from him before the vehicle sped away. Jaime Cano did not hear any gunshots and did not notice that Jorge Cano was lying on the ground, dead from gunshot wounds, until after appellant and his companions had left the scene. It was not until paramedics arrived some time later that Jaime Cano realized that he too had been shot.

In addition to the testimony of bystanders who witnessed the shooting, the State offered statements made by two of the passengers in appellant's vehicle. Zayra Barrera, who was sitting in the front passenger seat, told police that she saw appellant pull out a gun and fire two shots. Carmen Cantu, who was sitting in a rear passenger seat, testified at trial that she saw appellant holding a black handgun and heard him fire

6

two shots from where he was sitting in the front of the vehicle. Cantu also saw Rafael Rodriguez, who was sitting next to her, holding a chrome-colored handgun and heard him fire one shot.

Witnesses for the State testified about the police search of appellant's vehicle, which revealed damage to the driver's side window consistent with a bullet trajectory, as well as blood inside and outside of the vehicle. Forensic testing was used to match blood found on the outside driver's door handle with Jorge Cano's DNA. Blood found on the outside of the driver's door was matched with appellant's DNA. In addition, appellant's blood and the blood of an unknown second person were found on the black Hi-Point 9mm recovered by police during their search of the apartment used by appellant.

The forensic pathologist who performed the autopsy on Jorge Cano testified that the cause of death was determined to be gunshot wounds to the head and torso. Examination of the body revealed gunpowder burns on the victim's face, right arm, and right hand, indicating that the shots were fired from within two feet of the victim. There were no powder burns to indicate that the victim was holding the gun when it was fired.

As is often the case, the evidence of appellant's intent is circumstantial. *See Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) ("[T]he lack of direct evidence is not dispositive of the issue of a defendant's guilt. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor."); *Turner v. State*, 600 S.W.2d 927, 929 (Tex. Crim. App. 1980) ("[T]he Court has consistently held that knowledge and intent can be inferred from conduct of, remarks by and circumstances surrounding the acts engaged in by an accused . . . ."). In challenging the sufficiency of

7

the evidence, appellant has contrasted intent to pull the trigger of a firearm with intent to cause death, arguing that the former does not establish the latter. Although this proposition is correct in principle, it is inapposite to our analysis because the evidence was not limited to appellant's intent to pull the trigger of a firearm. The evidence showed that appellant fired his handgun twice while aiming at the head and torso of a victim standing less than two feet away. Based on this evidence, a rational trier of fact could have found beyond a reasonable doubt that appellant intentionally caused Jorge Cano's death. *See Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007) ("[D]irect evidence of the elements of the offense is not required. Juries are permitted to make reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. Circumstantial evidence alone can be sufficient to establish guilt."). Accordingly, appellant's first issue is overruled.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

In his third issue, appellant complains about ineffective assistance of counsel.

### A. Standard of Review and Applicable Law

A claim of ineffective assistance of counsel entails two components. *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008). Appellant must establish both that his trial counsel performed deficiently and that the deficiency operated to prejudice him. *Id.* In evaluating the first component, reviewing courts must not second-guess legitimate strategic or tactical decisions made by trial counsel in the midst of trial, but instead "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668,

8

689 (1984). This means that unless there is a record sufficient to demonstrate that counsel's conduct was not the product of a strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate "unless the challenged conduct was so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

## B. Discussion

Appellant argues that he was denied effective assistance of counsel based on the failure of his trial counsel to (1) request a jury instruction on voluntary action, (2) object to the introduction of the four weapons police discovered in an apartment used by appellant and others, and (3) file a motion to disclose the identity of the Crime Stoppers informant. As set forth below, the record is not sufficient to overcome the presumption that trial counsel's performance was constitutionally adequate.

## 1. Jury Instruction on Voluntary Action

In the first part of his issue, appellant complains that trial counsel's performance was deficient because counsel failed to request an instruction on voluntary action. To prevail on this complaint, appellant must show that he was entitled to the instruction. *Fuentes v. State*, 991 S.W.2d 267, 272 (Tex. Crim. App. 1999). Involuntary conduct is a defense to prosecution. *See* TEX. PENAL CODE ANN. § 6.01(a) (West 2003) ("A person commits an offense only if he voluntarily engages in conduct including an act, an omission, or possession."). "When a person claims the involuntary-act defense he is conceding that his own body made the motion but denies responsibility for it." *Rogers v. State*, 105 S.W.3d 630, 639 n.30 (Tex. Crim. App. 2003). "Voluntariness," within the meaning of section 6.01(a), refers only to one's own physical body movements. *Id.* at

9

638. "If those physical movements are the nonvolitional result of someone else's act, are set in motion by some independent non-human force, are caused by a physical reflex or convulsion, or are the product of unconsciousness, hypnosis or other nonvolitional impetus, that movement is not voluntary." *Id.* "[A]n instruction on voluntariness is necessary only if the defendant admits committing the act charged and seeks to absolve himself from criminal responsibility for engaging in the conduct." *Bell v. State*, 867 S.W.2d 958, 962 (Tex. App.—Waco 1994, no pet.). Thus, in one decision, the court of appeals held that a defendant who claimed that his firearm accidently discharged was not entitled to a jury instruction on voluntary action, reasoning that "Appellant's testimony that he did not touch the trigger does not show that he was the passive instrument of another's act, i.e., that, somehow, his finger had been made to exert the requisite [five-and-one-half] pounds of force to squeeze the trigger and fire the gun." *Trujillo v. State*, 227 S.W.3d 164, 169-170 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

Our review of the record does not support appellant's characterization of the evidence that arguably raised the defensive issue of involuntary conduct. Although appellant maintains that the shooting took place during a struggle for control of appellant's handgun, the witnesses who were closest to the shooting, such as the passengers in appellant's vehicle, did not testify that a struggle for control of the weapon was taking place when the shooting occurred. Moreover, the testimony of the forensic pathologist established that the victim was not holding appellant's handgun and was up to two feet away when the shooting occurred. Appellant did not testify at trial and has never admitted to firing the shots that killed Jorge Cano. *See Bell*, 867 S.W.2d

at 962 ("[A]n instruction on voluntariness is necessary only if the defendant admits committing the act charged. . . ."). To the extent that appellant sought to raise the defensive issue of involuntary conduct at trial, it was necessary for him to offer some evidence proving that "he was the passive instrument of another's act." *Rogers*, 105 S.W.3d at 640. Because there was no such evidence, appellant was not entitled to a jury instruction on the defensive issue of involuntary conduct. Accordingly, we overrule appellant's complaint of ineffective assistance of counsel based on the failure to request a jury instruction on involuntary conduct.

**2. Objection to Weapons Offered as Evidence**

In the second part of his issue, appellant complains about his trial counsel's failure to object to the admission of the four weapons police found in the apartment used by appellant and others. "When an ineffective assistance claim alleges that counsel was deficient in failing to object to the admission of evidence, the defendant must show, as part of his claim, that the evidence was inadmissible." *Ortiz v. State*, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002) (citing *Jaubert v. State*, 74 S.W.3d 1 (Tex. Crim. App. 2002)). According to appellant, trial counsel should have objected on the grounds that the weapons were not relevant, merely showed character in conformity and a propensity for crime, and to the extent relevant, if any, their probative value was outweighed by their unfairly prejudicial nature. *See* TEX. R. EVID. 402, 403(b), 404. We disagree.

The Hi-Point 9mm handgun recovered from the apartment was the same type of gun that fired the fatal shots that killed Jorge Cano, matched the description of the gun witnesses saw appellant holding at the time of the shooting, and had appellant's blood

11

spilled on it, consistent with the injuries sustained by appellant immediately prior to the shooting. There would be no merit to a challenge to the admissibility of this evidence based on relevance, unfair prejudice, or action in conformity with character. The same is true of the second handgun recovered from the apartment, which matched the description of the gun witnesses saw Rafael Rodriguez holding at the time of the shooting. Although appellant attempted to create reasonable doubt about his guilt based on Rodriguez's participation in the shooting, the forensic evidence established conclusively that the handgun did not fire the fatal shots that killed Jorge Cano. Appellant has not satisfied the burden of establishing that this evidence was inadmissible. *See Ortiz*, 93 S.W.3d at 93.

Finally, with regard to the two remaining weapons, we note that the trial court has discretion to admit or exclude evidence. *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). Although it is possible that the trial court may have sustained an objection to the admissibility of one or both of the weapons, the record does not establish that "counsel's representation was so lacking in tactical or strategic decisionmaking as to overcome the presumption that counsel's conduct was reasonable and professional." *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *see also Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007) ("The lack of a clear record usually will prevent the appellant from meeting the first part of the *Strickland* test, as the reasonableness of counsel's choices and motivations during trial can be proven deficient only through facts that do not normally appear in the appellate record. It is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence."). Accordingly, we

12

overrule appellant's complaint of ineffective assistance of counsel based on the failure to object to the admissibility of the weapons.

### 3. Identity of Crime Stoppers Informant

In the third part of his issue, appellant complains that he was denied effective assistance of counsel by the failure of his trial counsel to file a motion to disclose the identity of the informant who supplied information about appellant's involvement in the shooting to Crime Stoppers. According to appellant, the information the Crime Stoppers informant provided the police was significant and important because the information was used by investigators to focus their investigation on appellant and to support and obtain the search warrants for the weapons and ammunition that was eventually secured. Appellant argues that "the disclosure of the identity of the informer (and the information he provided investigators) was pivotal, so that Appellant could have an opportunity to confront the informer and conduct a meaningful cross-examination."

Appellant's complaint assumes the existence of unspecified exculpatory evidence that would have been discovered through the disclosure of the identity of the Crime Stoppers informant. *See Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (holding counsel not ineffective for failing to present more mitigating evidence in capital murder trial when defendant did not specify what evidence should have been presented); *see also Bone*, 77 S.W.3d at 835 ("If a reviewing court can speculate about the existence of further mitigating evidence, then it just as logically might speculate about the existence of further aggravating evidence. Ineffective assistance of counsel claims are not built on retrospective speculation; they must be firmly founded in the record. That record must itself affirmatively demonstrate the alleged ineffectiveness.").

This speculation is inappropriate, especially given the State's obligation to disclose exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83 (1963) (due process violated by the government's suppression of exculpatory evidence); *Bagley v. United States*, 473 U.S. 667 (1985) (*Brady* applies to impeachment evidence). Accordingly, we overrule appellant's complaint of ineffective assistance of counsel based on failure to file a motion to disclose the identity of the Crime Stoppers informant.

### IV. CONCLUSION

The judgment of the trial court is affirmed.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
31st day of August, 2011.